**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**STATE OF NEW YORK, THE NEW YORK**
**STATE DEPARTMENT OF ENVIRONMENTAL**
**CONSERVATION, and JOSEPH MARTENS, as**
**Commissioner of the New York State**
**Department of Environmental Conservation,**

**Plaintiffs,**

**v.**

Case No.  **1:14-cv-747**
**(GTS/CFH)**

**GENERAL ELECTRIC COMPANY,**

**Defendant.**

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**STATE OF NEW YORK'S**
**MOTION TO DISMISS GENERAL ELECTRIC'S**
**COUNTERCLAIMS**

**ERIC T. SCHNEIDERMAN**
Attorney General of the
 State of New York
Attorney for Plaintiffs
Environmental Protection Bureau
The Capitol
Albany, New York 12224
518-474-7154

LEMUEL SROLOVIC
MAUREEN F. LEARY
JOSEPH M. KOWALCZYK
Assistant Attorneys General

Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................ii

I.      **PRELIMINARY STATEMENT** .......................................................... 1

II.     **STATUTORY AND REGULATORY FRAMEWORK** .................................. 2

      CERCLA Liability Scheme and Defenses ............................................. 2

      Exclusive Jurisdiction of Federal Court............................................... 2

      State Immunity From Liability Under CERCLA ............................................. 2

      Immunity Under CERCLA for Parties Rendering Care or Advice .................. 4

      The State's Statutory Authority to Respond to Hazardous Waste Disposal Sites and Health Emergencies ............................................. 4

      New York State Superfund Program ................................................. 4

      New York State Superfund Program ................................................. 5

      Nationwide PCB Ban ........................................................................ 6

III.    **STATEMENT OF FACTS** ............................................................. 6

      Confirmation of PCB Contamination at the Alkes and Residential Properties ........................................................................ 7

      DOH Declaration of Conditions Dangerous to Life and Health........................ 7

      DEC Emergency Removal Action Pursuant to DOH's Declaration ................ 9

      EPA Approval of DEC's Emergency Removal Action ....................................... 9

      The State's Complaint .................................................................... 12

      GE's Counterclaims for Contribution and Setoff/Recoupment ...................... 12

IV.    **LEGAL STANDARD**....................................................................... 14

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

V.  **ARGUMENT** ................................................................................................ 15

**POINT I**

THE STATE IS IMMUNE FROM LIABILITY FOR GE'S
CERCLA SECTION 113(f) CONTRIBUTION COUNTERCLAIMS
UNDER THE ELEVENTH AMENDMENT ............................................................ 15

**POINT II**

THE STATE IS IMMUNE FROM LIABILITY FOR GE'S
OFFSET/RECOUPMENT COUNTERCLAIM PURSUANT
TO PRINCIPLES OF SOVEREIGN IMMUNITY ...................................................... 20

**POINT III**

THE STATE HAS NOT WAIVED EITHER ITS ELEVENTH
AMENDMENT OR SOVEREIGN IMMUNITY IN BRINGING
THIS ACTION ................................................................................................ 21

**POINT IV**
GE'S COUNTERCLAIMS FAIL TO STATE A CLAIM ON
WHICH RELIEF CAN BE GRANTED .................................................................. 27

    A. <u>CERCLA Section 107(d) Immunizes the State from Liability for
Counterclaims I and II (CERCLA Section 113)</u>

    B. <u>The State is not a facility owner/operator or arranger for the disposal of
hazardous waste within the meaning of CERCLA Section 107(a)(1)-(3).</u>

    C. <u>Counterclaim III (Common Law Public Nuisance and Offset/Recoupment)</u>

VI. **CONCLUSION** ............................................................................ 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>CASES</u>

*Alden v. Maine,*
 527 U.S. 706 (1999) ........................................................................... 18

*Allaire Corp. v. Okumus,*
 433 F.3d 248 (2d Cir. 2006) ............................................................. 14

*AMW Materials Testing, Inc. v. Town of Babylon,*
 584 f.3d 436 (2d Cir. 2009)......................................................... 28, 29

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ........................................................................... 14

*Atascadero State Hospital v. Scanlon,*
 473 U.S. 234 (1985) ............................................................... 16 n.1, 21

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ........................................................................... 14

*Board of Regents v. Phoenix,*
 653 f.3d 448 (7th Cir. 2011) ............................................................. 24

*Bull v. United States,*
 295 U.S. 247 (1935) ........................................................................... 24

*Burnette v. Carothers,*
 192 F.3d 52 (2d Cir. 1999),
 *cert. denied,* 531 U.S. 1052 (2000) ............................................. 15-17

*College Savings Bank v. Fla. Prepaid*
 *Postsecondary Education Expense Bd.,*
 527 U.S. 666 (1999) ........................................................................... 21

*Easley v. New York State Thruway Authority,*
 1 N.Y.2d 374 (1956)........................................................................... 20

*FDIC v. FSSS,*
 829 F. Supp. 317 (D.Ak. 1993)......................................................... 23

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Federal Maritime Commission v. South Carolina State Ports Authority,*
535 U.S. 743 (2002) ............................................................................... 20

*Fishbein v. Miranda,*
785 F. Supp. 2d 375 (S.D.N.Y. 2011) .................................................... 24

*Fitzpatrick v. Bitzer,*
427 U.S. 445 (1976) ............................................................................... 21

*Flacke v. Onondaga Landfill Systems, Inc.,*
69 N.Y.2d 355 (1987) ............................................................................. 20

*Garcia v. San Antonio Metropolitan Transit Authority,*
469 U.S. 528 (1985) ............................................................................... 19

*Gollomp v. Spitzer,*
568 F.3d 355 (2d Cir. 2009) ............................................................ 20, 31

*Great Northern Ins. Co. v. Read,*
322 U.S. 47 (1944) ................................................................................. 21

*Hans v. Louisiana,*
134 U.S. 1 (1890) ................................................................................... 17

*Lapides v. Board of Regents,*
535 U.S. 613 (2002) ............................................................................... 16

*Makarova V. United States,*
201 F.3d 110 (2d Cir. 2000) .................................................................. 14

*Mastafa v. Chevron Corp.,*
770 F.3d 170 (2d Cir. 2014) .................................................................. 14

*Morell v. Balasubramanian,*
70 N.Y.2d 297 (1987) ............................................................................. 20

*Pennsylvania v. Lockheed Martin Corporation,*
731 F. Supp. 2d 411 (M.D.Pa. 2010) ..................................................... 22

*Pennsylvania v. Union Gas Co.,*
491 U.S. 1 (1989) ................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

*Seminole Tribe of Florida v. State of Florida,*
517 U.S. 44 (1996) ........................................................................... 16-19

*State of New York v. City of Johnstown,*
701 F. Supp. 33 (N.D.N.Y. 1988) ..................................................... 30

*State of New York v. Shore Realty Corp.,*
759 F.2d 1032 (2d Cir. 1985) ........................................................... 19

*Stilloe v. Almy Brothers,*
782 F. Supp. 731 (N.D.N.Y. 1992) ................................................ 30-31

*Sunrise Securities Litigation, Matter of,*
818 F. Supp. 830 (E.D.Pa. 1993) ...................................................... 24

*Tango v. Televech,*
61 N.Y.2d 34 (1983) ......................................................................... 20

*United States v. Allied Corp.,*
789 F. Supp. 93 (N.D.N.Y. 1992) ..................................................... 31

*United States v. American Color and Chemical Corp.,*
858 F. Supp. 445 (M.D.Pa 1994) ................................................. 23, 26

*United States v. American Color and Chemical Corp.,*
885 F. Supp. 111 (M.D.Pa 1995) ...................................................... 27

*United States v. Dart Industries,*
847 F.2d 144 (4th Cir. 1988) ............................................................ 31

*United States v. Forma,*
42 F.3d 759 (2d Cir. 1994) ............................................................... 21

*United States v. Green,*
33 F. Supp. 2d 203 (W.D.N.Y. 1998) ........................................... 23, 25

*United States v. Hardage,*
750 F. Supp. 1460 (W.D.Okl. 1990) ................................................. 25

*United States v. Iron Mountain Mines, Inc.,*
881 F. Supp. 1432 (E.D.Ca. 1995) ................................................... 26

iii

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Rohm and Haas Co.,*
    939 F. Supp. 1157 (D.N.J. 1996) ................................................................ 25, 26

*United States v. Smuggler-Durant Mining Corporation,*
    823 F. Supp. 873 (D.Colo. 1993) .................................................... 27

*United States v. Wissahickon Tool Works, Inc.,*
    200 F.2d 936 (2d Cir. 1952) ........................................................ 18


UNITED STATES CONSTITUTION
U.S. Const., Amend. XI ....................................................................... 15
U.S. Const., art. I, § 8, cl.3 ................................................................. 16

NEW YORK STATE CONSTITUTION
N.Y. Const., art. VI, § 9 ...................................................................... 20


FEDERAL STATUTES

Comprehensive Environmental Response, Contribution and Liability Act
("CERCLA")
    § 101(9) ...................................................................................... 29
    § 101(21) .................................................................................... 16
    § 101(22) .................................................................................... 29
    § 101(23) .................................................................................... 30
    § 107 .................................................................................... passim
    § 107(a) ............................................................................... passim
    § 107(a)(1) .............................................................................. 29, 30
    § 107(a)(2) .................................................................................... 30
    § 107(a)(3) .............................................................................. 22, 30
    § 107(d)(1) ............................................................................... 1, 18
    § 107(d)(2) ....................................................................... 3, 28 n.5
    § 113(b) ........................................................................................ 4
    § 113(f) ............................................................................... passim
    § 113(f)(1) .................................................................................... 13
    § 113(g)(3) .................................................................................. 13

42 U.S.C.
    § 9601*et seq.* ...................................................................... 16 n.1
    § 9601(21) .............................................................................. 2, 16

# TABLE OF AUTHORITIES

Page(s)

§ 9601(23) .................................................................................................. 30
§ 9605(c) ..................................................................................................... 5
§ 9607(a) ............................................................................................... passim
§ 9607(a)(1) – (4) ........................................................................................ 2
§ 9607(b) ..................................................................................................... 3
§ 9607(d)(1) .......................................................................................... 3, 28
§ 9607(d)(2) .................................................................................... 3, 28 n.5
§ 9613(b) ..................................................................................................... 4
§ 9613(f) .............................................................................................. passim
§ 9613(f)(1) ......................................................................................... passim

15 U.S.C. ("Toxic Substances Control Act')
§ 2601 *et seq.* ............................................................................................ 6

28 U.S.C. ("Declaratory Judgment Act")
§ 2201(a) .................................................................................................. 13

FEDERAL RULES
40 C.F.R.
Part 300 ................................................................................................. 2, 5

FRCP ("Federal Rules of Civil Practice)
12(b)(1) ............................................................................................... passim
12(b)(6) ............................................................................................... passim
13(a) .................................................................................................... 24-26
13(d) .................................................................................................. 24 n.3

STATE STATUTES
CCA ("Court of Claims")
Art. 11, § 9 ............................................................................................... 31
Art. 11, § 9(2) ......................................................................................... 20

ECL ("Environmental Conservation Law")
§ 27-1301 *et seq.* ....................................................................................... 4
§ 27-1305 .................................................................................................... 5
§ 27-1313 ................................................................................................. 4, 5
§ 27-1313(5)(b) .......................................................................................... 5

PHL ("Public Health Law")
§ 1385 *et seq.* ............................................................................................. 5
§ 1388 ......................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

§ 1389-a *et seq.* ..........................................................................................

§ 1389-b ..........................................................................................passim

§ 1389-b(2) ................................................................................ 6

§ 1389-b(3)(a) ........................................................................... 6

§ 1389-b(3)(b) ........................................................................... 6

§ 1389-b(5)(b) ........................................................................... 9

<u>STATE REGULATIONS</u>

NYCRR ("Official Compilation of New York State Codes, Rules and Regulations")

6 NYCRR

§ Part 375 ................................................................................. 5

<u>MISCELLANEOUS</u>

3-13 Moore's Federal Practice (Matthew Bender 3d Ed.)

§ 13.13................................................................................... 25

§ 13.50................................................................................... 21

S. Rep. No. 848, 96th Cong., 2d Sess. 13 (1980) ..................................... 27

## PRELIMINARY STATEMENT

Plaintiffs State of New York, the New York State Department of Environmental Conservation ("DEC") and the DEC Commissioner (collectively the "State"), submit this memorandum of law and accompanying affidavits with exhibits in support of their motion to dismiss the counterclaims of defendant General Electric Company ("GE") pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  The State brought this action against GE pursuant to the Comprehensive Environmental Response, Contribution and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*. to recover the costs incurred in responding to environmental contamination at an industrial disposal site and at certain nearby residential properties in Queensbury, New York.  GE asserts two counterclaims pursuant to CERCLA Section 113(f) and one counterclaim for recoupment pursuant to the New York common law.  The court lacks subject matter jurisdiction over GE's counterclaims because they are barred by the Eleventh Amendment and the State's sovereign immunity.  The State has not waived that immunity.

In addition, each counterclaim fails to state a claim on which relief may be granted because the State at all times acted in its regulatory capacity, as a result of an emergency, and otherwise rendered care and advice.  To the extent that the court exercises jurisdiction over GE's counterclaims, the State is not within the scope of liability set forth in CERCLA's scheme and is expressly protected from liability under CERCLA Section 107(d)(1) and (2).  Moreover, the State cannot be considered to be within the class of persons encompassed in Section 107(a) as the owner or

operator of a facility, or as one who arranged for disposal of hazardous substances. For the reasons set forth below, GE's counterclaims should be dismissed.  FRCP 12(b)(1) and (6).

## STATUTORY AND LEGAL FRAMEWORK

<u>CERCLA Liability Scheme and Defenses</u>

CERCLA Section 107 creates a liability scheme enabling State and Federal governments to recover from four classes of person "all costs of removal or remedial action" incurred in responding to and otherwise addressing the release of hazardous substances into the environment.  42 U.S.C. § 9607(a).  Section 107(a) requires that the governments' costs in removal or remedial actions be "not inconsistent with the national contingency plan" ("NCP"). 40 C.F.R. Part 300.  The four classes of persons that may be held liable are: (1) an owner or operator of a facility; (2) an owner or operator of a facility at the time of disposal; (3) a person arranging for the disposal of hazardous substances at a facility; and (4) any person who transports hazardous substances for disposal at a facility.  42 U.S.C. § 9607(a)(1) – (4).  CERCLA broadly defines "person" to include both the State and the United States.  42 U.S.C. § 9601(21).  It also broadly defines "facility" to include any site or area where hazardous substances have been deposited, stored, disposed of, placed, or otherwise come to be located.  42 U.S.C. § 9601(9).

The liability scheme in Section 107(a) is strict, joint and several, but is subject to three limited statutory defenses: (1) an act of God, (2) an act of war, or (3) an act or omission of a third party other than an employee, agent or party whose act

or omission is not in connection with a contractual relationship with the defendant. 42 U.S.C. § 9607(b).

CERCLA Section 113(f) creates a separate liability scheme for a person liable under Section 107(a) to force other liable persons to contribute to and share responsibility for reimbursement of the government's response costs.  42 U.S.C. § 9613(f)(1).

### State Immunity From Liability Under CERCLA

CERCLA Section 107(d)(2) provides that no State shall be liable as a result of "actions taken in response to an emergency created by the release or threatened release of hazardous substances generated by or from a facility owned by another person." 42 U.S.C. § 9607(d)(2).  This immunity from liability does not apply "as a result of gross negligence or intentional misconduct" by the State and "…reckless, willful, or wanton misconduct shall constitute gross negligence."  42 U.S.C. § 9607(d)(2).

### Immunity Under CERCLA for Parties Rendering Care or Advice

CERCLA Section 107(d) (1) provides that no person, which is defined to include the State, shall be liable for "actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan," but does not preclude liability as a result of negligence.  42 U.S.C. § 9607(d)(1).

<u>Exclusive Jurisdiction of Federal Courts</u>

CERCLA Section 113(b) provides that "United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b).

<u>The State's Statutory Authority to Respond to Hazardous Waste Disposal Sites and Health Emergencies</u>

DEC and the New York State Department of Health ("DOH") are the State agencies with primary responsibility for protecting human health and the environment as a result of the release of toxic and hazardous substances from hazardous waste disposal sites in New York, such as the site at issue here. DEC is responsible for developing and implementing New York's hazardous waste site remedial program, also known as the State Superfund Law. *See* Environmental Conservation Law ("ECL") § 27-1313. DOH is responsible for protecting the public from exposure to toxic substances and is authorized to declare an emergency and take such measures "reasonably necessary and proper for the preservation and protection of the public health." Public Health Law ("PHL") § 1388; 1389-b.

<u>New York State Superfund Program</u>

In 1978, the New York legislature passed the State Superfund Law, ECL § 27-1301 *et seq.*, which establishes the legal framework for the investigation and remediation of hazardous waste sites. The Superfund Law is analogous to, and works in a complementary fashion with, the federal Superfund Law created in

CERCLA.  Both statutes involve (1) identification, listing and classification of hazardous waste disposal sites [*see* ECL § 27-1305; 42 U.S.C. § 9605(c)]; (2) remediation of such sites consistent with certain regulatory criteria [*see* 6 NYCRR Part 375; 40 C.F.R. Part 300]; and recovery of the costs of government-funded remediation under a strict, joint and several liability scheme [*see* ECL § 27-1313(5)(b) and (c); 42 U.S.C. § 9607(a)].  DEC and EPA have the primary authority to implement their respective Superfund Laws.  Both DEC and the United States Environmental Protection Agency ("EPA") recover the costs associated with their regulatory removal and remedial response actions pursuant to CERCLA Section 107(a).  42 U.S.C. § 9607(a).

<u>DOH Authority to Declare Conditions Dangerous to Public Health</u>

In 1979, the New York Legislature passed the Toxic Substances and Hazardous Waste Disposal Laws, Public Health Law ("PHL") § 1385 et seq., and § 1389-a et seq., which have the express intent to protect the public from exposure to toxic and hazardous substances.  These laws provide the DOH Commissioner with the authority to study and assess the serious health effects of toxic substance exposure and to issue an emergency declaration of conditions dangerous to life or health resulting from toxic substances at a hazardous waste disposal site.  PHL §§ 1388 and 1389-b(2).

When there is a condition dangerous to life or health resulting from a hazardous waste disposal site, the law provides that the DOH Commissioner "shall immediately declare the existence of such condition, and shall be responsible for

monitoring the site, approving the remedial program for the site, and certifying

completion of remediation.  PHL § 1389-b(2).  The Commissioner may request that

DEC develop and implement a remedial program for the site with the use of

available State funds, or may order the owner of such site and/or any person

responsible for disposal of hazardous wastes at such site to develop and implement

a remedial program.  PHL § 1389-b(3)(a).  Upon issuance of an emergency

declaration and a finding that it would be prejudicial to the public interest to delay

action, the DOH Commissioner is authorized to request that DEC take immediate

action to develop and implement a remedial program for a hazardous waste site.

PHL § 1389-b(3)(b).

<u>Nationwide PCB Ban</u>

For most of the 1900s, PCBs were widely used in electrical transformers and

capacitors, as well as other products. In 1976, as a result of alarming information

about PCBs and other hazardous chemicals, Congress passed the Toxic Substances

Control Act, 15 U.S.C. § 2601, *et seq.,* which authorizes the United States

Environmental Protection Agency to regulate and/or ban the manufacture of PCBs

and other chemical substances to which humans are exposed.  In 1979, EPA issued

final regulations implementing the ban after a three-year phase out because of the

significant damage to human health and the environment that could be caused by

the release of PCBs to air, soil, groundwater and surface water.  PCBs are

persistent and bio-accumulate in humans and wildlife species.

## STATEMENT OF FACTS

During the 1950s and 1960s, GE scrapped electric capacitors containing PCBs that had been manufactured at its plants in Hudson Falls and Fort Edward, New York that either failed the testing after manufacture, or were returned by customers.  (Burke Aff., ¶ 3, Exh. A).  GE sold scrap materials, including metals and sludge to a company known as Adirondack Waste, which was owned and operated by Richard Alkes.  Alkes operated a scrap yard on property located at 53 Luzerne Road, Queensbury that he owned from 1951 to 1976 (Alkes scrap yard) (Burke Aff., ¶ 4, Exh. B ).  A GE internal investigation confirmed that the company had transferred numerous scrap capacitors containing PCBs to Alkes, who then hauled them from the Fort Edward and Hudson Falls manufacturing plants.  (Burke Aff., ¶ 4, Exh. B).  GE estimated that between the years 1952 – 1965, Alkes hauled away about half of all the scrap capacitors from the two manufacturing plants, which contained approximately 420 tons of PCBs.  (Burke Aff., ¶ 4, Exh. B).  GE contracted with and/or otherwise requested that Alkes remove scrap capacitors containing PCBs from the GE Fort Edward and Hudson Falls plants (Burke Aff., ¶ 4, Exh. B).

<u>Confirmation of PCB Contamination at the Alkes and Residential Properties</u>

From April to August 1979, DEC and DOH sampled residential properties near Luzerne Road and confirmed PCB contamination.  (Anders Aff., ¶ 11, Exh. B). In June 1979, DEC and DOH staff inspected the former Alkes scrap yard located at 53 Luzerne Road and observed numerous scrap capacitors containing PCBs, PCB

7

impregnated capacitor paper, capacitors that had been broken open and PCB oil drained onto the soil, and areas where capacitors were piled several feet deep and partially buried (Burke Aff., ¶ 8, Exh. D).  DOH noted the human exposure potential from the scrap yard and its proximity to the nearby population.  (Anders Aff., ¶ 12, Exh. C).

DOH Declaration of Conditions Dangerous to Life and Health.

On or about August 30, 1979, pursuant to Public Health Law § 1389-b, the DOH Commissioner issued an emergency declaration that "one or more conditions has been found to exist . . . and alone or in combination, constitute a clear and present danger to life and health" at identified residential properties contaminated with PCBs (Anders Aff, ¶¶ 21-23, Exh. I, p. 1).  The Declaration recited the visible presence of PCB materials, strong PCB odors, and sampling results showing human exposure to PCBs, and stated that exposure to PCBs in the air and soil in the quantities found is a condition endangering the life and health of those living nearby (Anders Aff., Exh. I, pp. 1-2).

The Declaration contained the Commissioner's finding that the PCB contamination, which resulted from hazardous waste disposal, was a "significant threat to life and health." (Anders Aff., Exh. I, pp. 3-4).  The factual basis for the Commissioner's Declaration included (1) the presence of PCB contaminated materials at residential properties; (2) strong PCB odors within and outside of homes, which indicated "significant quantities of the PCB substances in the vapor phase;" (3) air samples demonstrating the presence of PCB vapors (at 19,400

8

nanograms per cubic meter); (4) sampling of soils and oily substances on the

ground's surface showing PCB contamination (at 4,000 to 5,000 parts per million)

(Anders Aff., Exh. I, pp. 1 -2).  The Declaration concluded that human exposure to

PCBs was a significant threat at six (6) identified residential properties and should

immediately be addressed and, pursuant to Public Health Law § 1389-b(5)(b),

authorized DEC to "develop and implement, or cause to be developed and

implemented an inactive hazardous waste site remedial plan" (Anders Aff., Exh. I,

pp. 3-4).

  DEC Emergency Removal Action Pursuant to DOH's Declaration.

  On August 2, 1979, DEC submitted to EPA for approval a detailed design

plan for the excavation of PCB wastes from the Alkes scrap yard and from several

contaminated residential properties.  The plan called for construction of a

temporary, lined and secure containment cell to hold the PCB wastes; placement of

a cap on the containment cell; installation of monitoring wells and a leak detection

system; construction of a leachate collection system; regular removal of leachate

from the collection system; and installation of fencing around the Site, including the

containment cell (Burke Aff., ¶ 13, Exh. F).   DEC's plan called for the containment

cell to be located on a property directly adjacent to the Alkes scrap yard (at 51

Luzerne Road) that was then owned by the City of Glens Falls (Burke Aff., ¶ 14).  In

transmitting its remedial plan proposal to EPA, DEC indicated that "there is an

urgent need to proceed . . . as rapidly as possible," and requested immediate

approval (Burke Aff., ¶ 14, Exh. F).

9

EPA Approval of DEC's Emergency Removal Action

On October 23, 1979, EPA approved DEC's removal plan to construct a secure emergency containment cell, calling it a "sound" plan and stating that "swiftly-implemented solutions are necessary to stop PCB volatilization in the area and to protect local residences" (Burke Aff., ¶ 16, Exh.  H, p. 12).

By the end of October 1979, excavation of PCB contaminated soil and materials began at residential properties and the Alkes scrap yard.  During excavation activities, the PCB contamination at the Alkes scrap yard proved to be so intense that some workers were sickened and went to the hospital despite their use of respirators and compliance with DOH's safety plan.  (Anders Aff., ¶ 27).

Once the GE scrap capacitors and PCB contaminated soil from the adjacent Alkes scrap yard and the six residential properties were placed in the containment cell, it was capped with a clay cap and a ten mil polyethylene sheet.  (Burke Aff., ¶ 28).  Several groundwater monitoring wells and a leachate collection system were also installed around the secure PCB containment cell.  In December 1979, a six foot high chain link fence was installed around the containment cell.  (Burke Aff., ¶ 25).  The PCB containment cell reached capacity before all contaminated soil had been excavated and not all of the PCB contamination at the Alkes scrap yard could be removed (Burke Aff., ¶ 19, Exh. I).

DEC developed and implemented a monitoring and maintenance plan for the secure PCB containment cell that included sampling of the groundwater wells and a leachate detection and collection system (Burke Aff., ¶ 20).

The secure PCB containment cell was constructed in accordance with EPA authorization pursuant to regulations promulgated under the Toxic Substances Control Act.  (Burke Aff., ¶ 21).  The secure PCB containment cell was an interim measure for the containment of the GE scrap capacitors and PCB contaminated soil until such time as a permanent method for disposal became technologically feasible. (Burke Aff., ¶ 21).

On or about May 16, 1980, DOH inspected the residential areas and the Site and confirmed that the immediate actions called for in the Commissioner's August 1979 Declaration had been properly implemented to abate human exposure to PCB contamination (Anders Aff., ¶ 29, Exh. K).

In December 1983, the City of Glens Falls transferred title to the property on which the secure PCB containment cell was located at 51 Luzerne Road to the State of New York upon the express condition that the premises only be used as a secure containment cell for the PCB waste removed from the Alkes scrap yard and residential sites in the Town of Queensbury (Burke Aff., ¶ 24).

During the period of 1980-1985, GE periodically removed PCB-contaminated leachate from the containment cell and transported it to its Fort Edward facility where it was treated and discharged into the Hudson River.  In May 1985, GE stopped removing, transporting and treating the containment cell leachate and DEC subsequently placed a synthetic cap over the containment cell. The Luzerne Road Site was listed on the New York Registry of Inactive Hazardous Waste Disposal Sites in 1987 as a Class 2 Inactive Hazardous Waste Site.

In 1991, DEC asked GE to implement a permanent remedy at the Site. GE failed to do so.  In 1999, DEC began a state-funded investigation of the Site and evaluation of the remedial alternatives (Burke Aff., ¶ 33).  In 2005 DEC issued a Record of Decision ("ROD") proposing a remedial program for the Site.  In 2008, DEC selected a more cost effective permanent remedy issued a notice to proceed to implement the remedy to its contractors.  In 2008, DEC funded the treatment of PCB contaminated soils and the excavation and off-site disposal of capacitors from the containment cell.  (Burke Aff., ¶ 36).  Today, the containment cell is eliminated and the PCB contamination is remediated.  DEC and DOH continue to monitor the effectiveness of the remedy implemented.

The releases of GE's PCB wastes ultimately caused the State to incur approximately $30,000,000 in remediation costs (Complaint ¶ 66).

The State's Complaint

The State's complaint against GE is brought pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), and the common law of restitution.  It seeks recovery of response costs incurred in cleaning up and otherwise addressing the release of hazardous substances at the Alkes scrap yard and at residential properties, including the remediation of the containment cell on property adjacent to the Alkes site.

GE's Counterclaims for Contribution and Setoff/Recoupment

GE's first counterclaim alleges that the State is a liable person within the meaning of CERCLA Section 107(a) because it (1) arranged for the disposal of

hazardous substances, and (2) is an owner/operator of a facility at which hazardous substances have been released (Counterclaim, Count I, ¶¶ 28- 29).  GE alleges that "the State is liable for an equitable share of the response costs" pursuant to CERCLA § 113(f)(1) (Counterclaim, ¶¶ 30- 31).  GE seeks contribution and an award "for an equitable offset of response costs" (Counterclaim, *Ad Damdum* Clause B).

GE's second counterclaim similarly alleges that the State is liable for contributing to the harm at the Site and that there is a "reasonable basis for division" of the harm according to the State's contribution and for its apportionment between GE and the State (Counterclaim, Count II, ¶¶ 35-35).  GE asserts that the State is seeking response costs associated with remediation of "additional properties" having "no geographic or functional relationship to the Site," providing grounds for apportionment (Counterclaim, ¶ 35).  GE alleges that the harm is divisible (Counterclaim, ¶¶ 36-37).  GE seeks a declaratory judgment under CERCLA Section 113(g)(3) and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that the State is liable not only for past response costs, but for any future costs incurred by GE (Counterclaim, ¶ 38).

GE's third counterclaim, titled as one for recoupment, alleges that the State's actions and inactions created a common law public nuisance and that, in the event that the State is awarded monetary relief against GE, "such award should be offset by the State's fair share of the clean-up costs attributable to the State's own liability" (Counterclaim, Count III, ¶40).

In its prayer for relief on the counterclaims, GE seeks not just dismissal of the State's claims, but a declaration that the State has CERCLA liability and that the harm is divisible.  GE seeks an "offset based upon the State's fair share," and an award of costs, attorneys' fees and disbursements (Counterclaim, *Ad Damdum* Clauses A – G).

**APPLICABLE LEGAL STANDARD**

Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 173 (2d Cir. 2014); *Makarova,* 201 F.3d at 113.  In determining whether subject matter jurisdiction exists, the district court may examine evidence outside the pleadings.  *Makarova,* 201 F.3d at 113.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter, that if accepted as true, states a claim to relief "that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Although the court accepts factual allegations as true, legal conclusions enjoy no similar presumption.  Where a court is unable to infer more than the mere

possibility of alleged misconduct based on the pleadings, there is no entitlement to relief and the action is subject to dismissal. *Iqbal,* 556 U.S. at 678-79.

## ARGUMENT

### POINT I

### THE STATE IS IMMUNE FROM LIABILITY FOR GE'S CERCLA SECTION 113(f) CONTRIBUTION COUNTERCLAIMS UNDER THE ELEVENTH AMENDMENT

GE's first and second counterclaims (Counts I and II) assert that the State is liable under CERCLA Section 113 as an owner/operator of a facility, or as an arranger for the disposal of hazardous substances, within the meaning of Section 107(a).  *See* 42 U.S.C. §§ 9607(a) and 9613(f).  The State is immune from liability under Section 113.  Under the Eleventh Amendment, a private right of action under CERCLA cannot be asserted against the State in the absence of its consent or waiver.  U.S. Const., Amend. XI; *Burnette v. Carothers,* 192 F. 3d 52, 58-59 (2d Cir. 1999), *cert. denied,* 531 U.S. 1052 (2000) (dismissing CERCLA citizen suit against the State).  As discussed in Point III, the State has neither consented to nor waived its immunity.  GE's counterclaims are barred by the Eleventh Amendment and should be dismissed.  FRCP 12(b)(1).

The Eleventh Amendment provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against a State by the citizens of any State.  U.S. Const. amend. XI.  It prohibits federal courts from exercising subject matter jurisdiction over claims by private parties against a State.  *Seminole Tribe of Florida v. State of Florida,* 517

U.S. 44, 54 (1996); *Lapides v. Board of Regents,* 535 U.S. 613, 616 (2002).  Congress

may only abrogate State immunity if it acts pursuant to the Fourteenth

Amendment.  *Seminole Tribe,* 517 U.S. at 59.  Congress is not authorized to

abrogate Eleventh Amendment immunity pursuant to its Commerce Clause power

CERCLA was enacted pursuant to Congress' authority under the Commerce Clause,

U.S. Const., Art. I, § 8, cl. 3.  Any provision of CERCLA that purports to give a

private right of action against the State, including the claims GE alleges under

Section 113, is not subject to federal court jurisdiction.  *Burnette v. Carothers,* 192

F. 3d at 58-59.

   CERCLA creates a comprehensive liability scheme whose primary objective is

to allow State and federal governments to assert claims against any "person"

responsible for the release of hazardous substances to the environment.  42 U.S.C. §

9607(a).  The word "person" is defined under Section 101(21) to include both the

States and the United States.  42 U.S.C. § 9601(21).  Under CERCLA Section 113(f),

a liable polluting party may assert claims for contribution against another person

who is liable under Section 107(a).  *See* 42 U.S.C. §9613(f).  Thus, these provisions

purport to create a private right of action against a State for contribution liability

under Section 113.  42 U.S.C. § 9613(f).[1]  Two of GE's counterclaims (Counts I and

---

[1] Congress must express its intention to abrogate the Eleventh Amendment in
unmistakable statutory language.  *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 243
(1985).  This intent is expressed in three of CERCLA's provisions: the inclusion of the State
in the definition of "person" who may be found liable under Sections 107(a) and 113(f) (*see*
42 U.S.C. § 9601[21]); the State's liability when acting in an emergency if grossly negligent
or guilty of intentional misconduct (*see* 42 U.S.C. § 9607[d][2]); and the State's negligence
when rendering care and advice (see 42 U.S.C. § 9607[d][1]).

II) allege Section 113 liability against the State here.  As such, they are barred.

In *Pennsylvania v Union Gas Co.,* 491 US 1, 17-18 (1989), the Supreme Court held that Congress had validly abrogated State immunity when it created causes of action under CERCLA Sections 107 and 113(f), which imposed liability on a State. But *Union Gas* was later expressly overruled by the Supreme Court in *Seminole Tribe,* when the Court reaffirmed the century-old holding in *Hans v. Louisiana,* 134 U.S. 1, 13 (1890) that the Eleventh Amendment protects each State as a sovereign entity in the federal system.  517 U.S. at 54 -55.  The Court in *Seminole Tribe* held that a State may not be sued by a private party without its consent.  517 U.S. at 62. The Court held that Congress cannot abrogate a State's Eleventh Amendment immunity when enacting legislation pursuant to its Commerce Clause authority. 517 U.S. at 66.  After extensively discussing its holding in *Union Gas,* the Court in *Seminole Tribe* expressly overruled it, including the holding that in enacting CERCLA under its Commerce Clause power, Congress can abrogate Eleventh Amendment immunity and create a private right of action against a State.  517 U.S. at 59-67.  *Burnette,* 192 F. 2d at 58-59.

Jurisdictional limitations based on sovereign immunity apply to both affirmative claims and to counterclaims against the Government.  *United States v. Wissahickon Tool Works, Inc.,* 200 F.2d 936, 939 (2d Cir. 1952).  To the extent that GE's counterclaims seek to impose CERCLA liability on the State under Section 113(f) and (g), the State's Eleventh Amendment immunity bars those claims and this court's exercise of jurisdiction.  FRCP 12(b)(1).

17

This is not to say that the State cannot be found liable under CERCLA.  The Supremacy Clause of the Constitution plainly allows Congress to impose substantive requirements and limitations on States in CERCLA, but it may not delegate to private parties the right to enforce CERCLA against the State.  A State's liability under Sections 107(a) or 113(f) certainly could be asserted by the United States.

Indeed, if the EPA concludes here that New York is an owner/operator of a facility, or has arranged for the disposal of hazardous substances, within the meaning of Section 107(a), or has been guilty of negligence, gross negligence or intentional misconduct, within the meaning of CERCLA Section 107(d)(1) and (2), nothing precludes the United States from taking legal action against the State to impose liability.  *See Alden v. Maine*, 527 U.S. 706, 756-757 (1999) (suits against a State brought by the United States require "the exercise of political responsibility, … a control which is absent from a broad delegation to private persons to sue non-consenting States").  But the United States has taken no such action against the State.  In fact, EPA approved the removal plan undertaken by DEC about which GE complains (Burke Aff., ¶ 16).

The issue is not about the right of Congress to impose CERCLA's requirements on the State, including the imposition of liability under Section 107(a).  *See Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 554-556 (1985).  Rather, the issue is whether those federal requirements may be enforced through private causes of action, as GE's counterclaims purport to do here.

18

This reading of CERCLA's liability scheme makes sense because its primary objective is for State and federal governments to promptly remediate contaminated sites and recover their costs by imposing strict, joint and several liability on persons who are responsible for the release of hazardous substances into the environment. *State of New York v. Shore Realty,* 759 F.2d 1032, 1043-44 (2d Cir. 1985). CERCLA's objective is simply not to benefit polluters by allowing them to answer their own liability by asserting that a responding government is equally liable.

To the extent that GE asserts claims against the State as an owner/operator or arranger for the disposal of hazardous substances under CERCLA Sections 107(a) and 113(f), the State is immune from such liability under the Eleventh Amendment and the Supreme Court's holding in *Seminole Tribe*. This court lacks subject matter jurisdiction to hear GE's first and second counterclaims and they should be dismissed. FRCP 12(b)(1).

## POINT II

### THE STATE IS IMMUNE FROM LIABILITY FOR GE'S OFFSET/RECOUPMENT COUNTERCLAIM PURSUANT TO PRINCIPLES OF SOVEREIGN IMMUNITY

GE's third counterclaim (Count III) asserts that the State created a public nuisance and that any award against GE should be offset by the State's fair share of the cleanup costs (Counterclaim, ¶40). The State is immune from this common law claim as well. In addition to Eleventh Amendment immunity, States enjoy their own inherent sovereignty under State law. *Federal Maritime Commission v. South Carolina Ports Authority,* 535 U.S. 743, 753-54 (2002). The State only enjoys

immunity as a sovereign under New York law to the extent that the New York legislature otherwise may provide.  N.Y. Const., Art. VI, § 9.

The New York Legislature has waived the State's immunity for breach of express or implied contracts or for torts in the Court of Claims Act ("CCA").  CCA Art. II, § 9(2).  To bring a case against the State sounding in tort for contribution, common law public nuisance and offset/recoupment, as GE's third counterclaim alleges, it must be brought in the Court of Claims.  *Morell v. Balasubramanian,* 70 N.Y.2d 297, 300 (1987); *Easley v. New York State Thruway Authority,* 1 N.Y.2d 374, 378 (1956); *see also Gollomp v. Spitzer,* 568 F. 3d 355-357 (2d Cir. 2009).  Neither a federal court, nor any other State court has jurisdiction to hear those claims.

The State also has immunity when its actions are "discretionary" in nature, *Tango v. Televech,* 61 N.Y.2d 34, 40 (1983), such as those related to remediating hazardous waste sites and responding to emergencies.  *Flacke v. Onondaga Landfill Systems, Inc.,* 69 N.Y.2d 355, 363 (1987).  GE's third counterclaim for common law public nuisance and offset should be dismissed.  FRCP 12(b)(1).

## POINT III

### THE STATE HAS NOT WAIVED ITS ELEVENTH AMENDMENT OR ITS SOVEREIGN IMMUNITY IN BRINGING THIS ACTION

A State's immunity from suit is not absolute.  A State may waive its sovereign immunity or otherwise consent to be sued.  *College Savings Bank v. Fla. Prepaid Postsecondary Education Expense Bd.,* 527 U.S. 666, 675-676 (1999); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455-456 (1976).  A waiver can generally be found

when either the State voluntarily invokes a federal court's jurisdiction, *Lapides v. Board of Regents,* 535 U.S. 613, 624 (2002), or if the State makes a "clear declaration" that it intends to submit itself to a court's jurisdiction.  *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 54 (1944).   But the simple act of filing suit in federal court does not constitute a blanket waiver as to any counterclaims.  *United States v. Forma*, 42 F.3d 759, 764 (2d Cir. 1994) (by filing a complaint, the United States does not thereby consent to be sued on a counterclaim as to which it had not otherwise given its consent to be sued); *see also* 3-13 Moore's Federal Practice § 13.50 (Matthew Bender 3d Ed.).  The test for determining whether a State has waived its immunity from federal-court jurisdiction is "a stringent one." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241(1985).

        The court has jurisdiction to determine GE's counterclaims only if the State has clearly and unequivocally consented or waived both its Eleventh Amendment and its State sovereign immunity to GE's counterclaims under CERCLA Section 113 (Counts I and II) and the common law (Count III).  The State has done neither.

        In bringing this CERCLA action to recover its costs, the State's waiver is a limited one.  The issue is *the extent* of that waiver and whether it includes GE's counterclaims under Section 113(f) and the common law.  *Pennsylvania v. Lockheed Martin Corporation,* 731 F. Supp. 2d 411, 415-416 (M.D.Pa. 2010) (defendant's CERCLA Section 113 contribution claims go beyond the State's complaint and are outside of the scope of its waiver of Eleventh Amendment immunity).

The scope of the State's waiver begins with its complaint and is limited to an adjudication of the issues directly related to the claims asserted.  The complaint alleges that during the 1950s and 1960s, GE arranged for the disposal of hazardous substances at the Alkes scrap yard and other properties, and that it is liable under CERCLA Section 107(a)(3) (Complaint, ¶¶ 68-82).  Although the complaint asserts fact about the many years of regulatory actions necessitated by GE's arrangement for disposal, including DEC's emergency removal action and implementation of a final remedial action, those actions post-date GE's acts related to disposal about which the State complains.  The complaint makes clear that GE's disposal activities were entirely separate from DEC's response actions to address the PCB contamination (Complaint, ¶¶ 16-18; 20-29).   It is GE's arrangement for disposal that is the transaction and occurrence pled in the complaint.  The State's waiver only encompasses the court's adjudication of issues associated with *that* transaction and occurrence. *State of See United States v. Green,* 33 F. Supp. 2d 203, 220-222 (W.D.N.Y. 1998) (common law claims against the United States and the State for activities after the events alleged in the complaint were not the same transaction or occurrence, were not compulsory, and there was no waiver of immunity).

A State generally waives immunity for compulsory counterclaims arising from the same transaction or occurrence that is the subject of the opposing party's claim.  FRCP 13(a); *Bull v. United States,* 295 U.S. 247, 260-61 (1935); *Board of Regents v. Phoenix,* 653 F. 3d 448, 468-69 (7th Cir. 2011).  A recoupment counterclaim is compulsory if it 1) arises from the same transaction or occurrence as

the main claim; 2) seeks relief of the same kind and nature as that sought by the main claim; and 3) is solely defensive in nature and does not seek affirmative relief. *United States v. American Color and Chemical Corp.,* 858 F. Supp. 445, 451-453 (M.D. Pa. 1994) (recoupment counterclaims for gross negligent against United States in CERCLA action related solely to the aftermath of defendant's disposal activities and involved wholly different events). The factual underpinnings of GE's counterclaims constitute a different transaction or occurrence from the State's claim and seek affirmative relief – a declaration of the State's liability for GE's future costs. They are not compulsory within the meaning of Rule 13(a). The State has not waived immunity as to those counterclaims.

Thus, by filing its complaint the State waives its immunity only insofar as an adjudication of the complaint and GE's liability under Section 107(a)'s, and an adjudication of GE's statutory defenses, namely, act of god, act of war, or act of third party. The waiver also necessarily applies to the issue of whether remedial activities are not inconsistent with the NCP. 42 U.S.C. § 9607(a). Clearly, GE is entitled to defend itself. But the State's waiver goes no further. *See United States v. American Color*, 858 F. Supp. at 450-53 (Section 113 and other counterclaims against United States dismissed for lack of jurisdiction because they arose from two wholly different series of events than those alleged in the government's Section 107 cost recovery complaint).

GE's third counterclaim (Count III) is framed as one for recoupment, which on its face is considered compulsory under Rule 13(a). This counterclaim is not

compulsory, however, because it is alleged against the State in a capacity different than the one in which the State has sued. *Fishbein v. Miranda,* 785 F. Supp. 2d 375, 391 (S.D.N.Y. 2011) (counterclaims for defamation were improper because they sought to impose liability on plaintiff in an individual capacity and plaintiff brought suit in official capacity as trustee); *In re Sunrise Securities Litigation,* 818 F. Supp. 830, 835-36 (E.D. Pa. 1993) (counterclaims against FDIC in its regulatory capacity in response to FDIC's malpractice action brought in its corporate capacity as assignee of failed bank was not within FDIC's waiver of immunity).[2]

The State brought this action in its regulatory capacity and at all times alleged in the complaint, acted in that capacity. *See generally* Anders and Burke Affidavits. GE's counterclaims, on the other hand, are asserted against the State in a proprietary or business capacity, purportedly as an owner/operator/arranger and/or as a joint tort feasor. Putting aside the fact that the State did not act in a proprietary or business role, and GE presents no facts to prove otherwise, the two capacities are different. The State has not waived its immunity to be sued as such.

To the extent that GE's counterclaims allege facts from an entirely different point in time, involve different circumstances, and are brought against the State in a capacity other than the one in which it is suing, they cannot be considered to arise

---

[2] GE's third counterclaim is titled recoupment but seeks offset relief, which is a different - albeit related - legal theory: "Should the Court award the State any monetary relief pursuant to the third claim for relief in the Complaint, *any such award should be offset* by the State's fair share of cleanup costs attributable to the State's own liability" (Counterclaim ¶¶ 40; emphasis added). Offset relief is generally for acts not directly related to plaintiff's claim and arises from a different transaction. See 3-13 Moore's Federal Practice § 13.31. Setoff is a permissive counterclaim under Rule 13 for which there has been no waiver of immunity.

from the same transaction and occurrence under Rule 13(a) and subject to a waiver

of immunity. *See United States v. Green,* 33 F. Supp. 2d at 220; (CERCLA

defendant's counterclaim alleging tort based on EPA's gross negligence and seeking

recoupment occurred after the events forming the basis of the complaint and were

not part of the same transaction, making counterclaims permissive rather than

compulsory and not within waiver of immunity); *United States v. Hardage,* 750 F.

Supp. 1460, 1519 (W.D.Okl.1990) (alleged EPA negligence did not arise from same

transaction as defendant's waste disposal giving rise to CERCLA liability); *see also*

*United States v. Rohm and Haas Co.,* 939 F. Supp 1157, 1162 (D.N.J. 1996).  If the

State had owned or operated the Alkes scrap yard when GE arranged for disposal,

or if the State had been improperly disposing of waste along with GE at the Alkes

scrap yard, GE's counterclaims could perhaps be said to arise from the same

transaction or occurrence within the meaning of Rule 13(a).  But GE does not – and

cannot - allege such facts in its counterclaim.

In any event, recoupment counterclaims against the government in CERCLA

cost recovery actions are generally not permissible because they are contrary to

CERCLA's objectives.  *United States v. Green,* 33 F. Supp. 2d at 224; *United States*

*v. Rohm and Haas,* 939 F. Supp. 1157, 1162 (D.N.J. 1996); *United States v. Iron*

*Mountain Mines, Inc.,* 881 F. Supp 1432, 1454-1457 (E.D.Ca. 1995) (recoupment

counterclaim against the United States and the State in CERCLA cost recovery

action was inherently inconsistent with CERCLA's objectives and would result in

"extraordinary exposure" for governmental activities during cleanup that otherwise

would be barred by the Eleventh Amendment).  GE's counterclaims are therefore inconsistent with CERCLA's intent and the principle Congress articulated when enacting it that "those who benefit financially from a commercial activity [should] internalize the health and environmental costs of that activity into the costs of doing business." S. Rep. No. 848, 96th Cong., 2d Sess. 13 (1980).

Although GE should be afforded the right to defend itself against the State's cost recovery claims and assert CERCLA's statutory defenses (act of God, act of war or act of a third party) and NCP inconsistency, that does not mean that GE can obtain the relief its counterclaims seek from this court.  *United States v. Smuggler-Durant Mining Corporation,* 823 F. Supp. 873, 878 (D.Colo. 1993) (recoupment claim rejected because defenses set forth in section 107(b) of CERCLA are the exclusive defenses to liability for response costs); *United States v. American Color*, 885 F. Supp. 111, 115 (M.D. Pa. 1995) (dismissing recoupment counterclaims against State for actions undertaken pursuant to the cleanup effort, finding such claims could only be raised as defense in NCP context).

GE's counterclaims go well-beyond the four corners of the complaint and the State has not waived its immunity for those claims.  They are not compulsory counterclaims and are contrary to CERCLA's intent.  The counterclaims should therefore be dismissed as beyond the court's jurisdiction.  F.R.C.P. 12(b)(1)

## POINT IV

## GE'S COUNTERCLAIMS FAIL TO STATE A CLAIM
## ON WHICH RELIEF CAN BE GRANTED

To the extent that the court finds that a private CERCLA Section 113(f) action against the State can be maintained by GE despite Eleventh Amendment and sovereign immunity, or that the State has waived its immunity to the counterclaims, GE in any event fails to state a claim on which relief can be granted. Each counterclaim should be dismissed.  FRCP 12(b)(6).

A. CERCLA Section 107(d) Immunizes the State from Liability for Counterclaims I and II (CERCLA Section 113)

In responding to the threat posed by the PCB contamination at the Site, the State was acting in response to a public health and environmental emergency as detailed in the Anders and Burke Affidavits submitted in support of this motion. CERCLA immunizes the State from liability for emergency action unless it has been grossly negligent or guilty of intentional misconduct.  42 U.S.C. § 9607(d)(2).[3] *AMW Materials Testing, Inc. v. Town of Babylon,* 584 F. 3d 436, 447-448 (2d Cir. 2009). GE's counterclaim alleges that the State was "grossly negligent" (Counterclaim, ¶ 26), but fails to set forth any factual support for that allegation.  It is merely a legal conclusion.  Accordingly, there is nothing alleged in the counterclaims for this court to deem as true with regard to the State's alleged gross negligence.

---

[3] Specifically Section 107(d)(2) protects the State from liability for actions "taken in response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person" but does not "preclude liability for costs or damages as a result of gross negligence or intentional misconduct by the State or local government."  42 U.S.C. § 9607(d)(2).

CERCLA also immunizes DEC from liability for rendering care and advice unless negligent.  42 U.S.C. § 9607(d)(1); *AMW Materials,* 584 F. 3d at 455.  Again, GE's counterclaims assert no facts that would reflect the State's negligence in rendering care and advice to eliminate this immunity.  GE's CERCLA Section 113(f) and (g) counterclaims fail to state a claim.  FRCP 12(b)(6).

    B.  <u>The State is not a facility owner/operator or arranger for the disposal of hazardous waste within the meaning of CERCLA Section 107(a)(1)-(3).</u>

GE fails to state a claim for contribution and declaratory judgment against the State as an owner/operator or arranger for the disposal of hazardous substances.  DEC's 1979 emergency removal of PCB wastes from the former Alkes scrap yard and several residences, and the placement of the waste in a well-designed, EPA-approved PCB containment cell, was not "disposal" of waste.  DEC's actions *contained* the waste and cut off unacceptable human exposure and environmental harm.  The State did not "dispose" or "release" hazardous substances to the environment at a facility within the meaning of CERCLA Sections 101(22) and 107(a).  42 U.S.C. §§ 9601(22) and 9607(a).

Furthermore, the containment cell cannot be considered a "facility" within the meaning of CERCLA Sections 101(9) and 107(a) because the State did not dispose or release hazardous substances to the environment there.  Notably, the containment cell was remediated, and its contents properly disposed and treated as part of the final remedy, pursuant to DEC's March 2005 Record of Decision,  (Burke Aff., ¶ 36).  And although the State took ownership of the parcel on which the

containment cell was located in furtherance of its emergency removal activities, that does not make the State an owner of a "facility" within the meaning of Section 107(a)(1) and (2).  42 U.S.C. §§ 9607(a)(1) and (2).

The State also did not own the hazardous substances it removed from various properties, particularly the Alkes scrap yard, in order to make it an arranger under Section 107(a)(3). *State of New York v. City of Johnstown,* 701 F. Supp. 33, 36 (N.D.N.Y. 1988) (to establish arranger liability, counterclaimant must show State ownership of or nexus with the waste disposed at the facility).  DEC's actions were intended to contain the PCB waste on a temporary basis and to eliminate further impacts on human health and the environment.  These actions do not constitute "arranging" for the disposal of hazardous wastes at a facility within the meaning of Section 107(a)(3), but rather constituted a "removal action" within the meaning of Section 101(23), 42 U.S.C. § 9601(23).  Nothing in CERCLA provides that a remedial action by a regulator can at the same time be considered arrangement for disposal.

Nor can DEC be considered an operator of a facility within the meaning of CERCLA Section 107(a)(1) or (2).  DEC's emergency actions were solely as a regulator protecting public health and the environment (*see generally* Anders and Burke Affidavits).  DEC never acted in a proprietary or business role and GE does not allege facts showing that it did.  It did not accept waste in the containment cell from any other source after the emergency removal activities (Burke Aff., ¶ 38).  Indeed, the State was involved with the site only in its remedial role.  *See Stilloe v.*

29

*Almy Brothers,* 782 F. Supp. 731, 736 (N.D.N.Y. 1992); *United States v. Dart Industries,* 847 F. 2d 144, 146 (4th Cir. 1988); *see also United States v. Allied Corp.,* 789 F. Supp 93, 97 (N.D.N.Y. 1992) (United States generated and disposed of hazardous waste at site and was liable as an operator).  The State's excavation and containment of PCB waste in 1979 for purposes of fulfilling its then-new statutory responsibilities simply does not denote the kind of ownership or control that Section 107(a) is intended to reach.  GE's Section 113 counterclaims fail to state a claim for relief.  FRCP 12(b)(6).

  C. <u>Counterclaim III (Common Law Public Nuisance and Offset/Recoupment)</u>

  Similarly, GE's final counterclaim for public nuisance and offset/recoupment fails to state a claim on which relief can be granted.  Such claims must be brought in the Court of Claims, the court with exclusive jurisdiction over contract and tort actions against the State.  CCA Art. II, § 9; *Gollomp,* 568 F. 2d at 357, n. 2.

## CONCLUSION

For the foregoing reasons, the court lacks subject matter jurisdiction over GE's counterclaims against the State and they otherwise fail to state claims on which relief can be granted.  The counterclaims therefore should be dismissed.

Dated:    Albany, New York                    Respectfully submitted,
          December 10, 2014

                                              ERIC T. SCHNEIDERMAN
                                              Attorney General of the
                                              State of New York

                                    By:    _____
                                              MAUREEN F. LEARY
                                              Assistant Attorneys General
                                              Bar Roll Number: 501162
                                              Attorney for Plaintiffs
                                              Environmental Protection Bureau
                                              The Capitol
                                              Albany, New York 12224
                                              Tel: 518-474-7154
                                              Fax: 518-473-2534
                                              Email: Maureen.Leary@ag.ny.gov