UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
            :

STATE OF NEW YORK, THE NEW YORK   :
STATE DEPARTMENT OF ENVIRONMENTAL  :
CONSERVATION, and JOSEPH MARTENS, as  :
Commissioner of the New York State Department  :
of Environmental Conservation,        :     **Case No. 1:14-cv-747 (GTS/CFH)**
            :
         *Plaintiffs,*    :
            :
   -against-       :
            :
GENERAL ELECTRIC COMPANY,     :
            :
         *Defendant.*  :
            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION TO DISMISS THE COUNTERCLAIMS
## OF DEFENDANT GENERAL ELECTRIC COMPANY

**GREENBERG TRAURIG, LLP**
*Attorneys for Defendant*
*   General Electric Company*
54 State Street, 6th Floor
Albany, New York 12207
Tel:  (518) 689-1400
Fax:  (518) 689-1499

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS ................................................................................................3

ARGUMENT .....................................................................................................................5

I.  GE's COUNTERCLAIMS ARE NOT BARRED BY THE ELEVENTH
    AMENDMENT TO THE U.S CONSTITUTION ....................................................5

    A.  The Court Must Accept the Averments of GE's Counterclaims as
        True ...............................................................................................................5

    B.  By Commencing Suit under CERCLA, the State Waived its
        Sovereign Immunity with Respect to GE's Counterclaims .........................6

        1.  The Eleventh Amendment Applies Only to "Suits" Filed by
            Private Parties. ...................................................................................7

        2.  The State Waived its Immunity to GE's Compulsory
            Counterclaims. .....................................................................................7

        3.  In the Second Circuit, the State's Waiver Also Encompasses
            GE's Counterclaims to the Extent Permissive. ..................................14

    C.  The Capacity in Which the State Plaintiffs Filed Suit is Irrelevant
        to a Determination of the Scope of the Waiver of Immunity ..................16

II. THE NEW YORK COURT OF CLAIMS ACT DOES NOT BAR GE's
    COUNTERCLAIM BASED ON RECOUPMENT ...............................................18

III. GE's COUNTERCLAIMS STATE A CAUSE OF ACTION ...............................18

    A.  GE's CERCLA Counterclaims Properly State a Cause of Action ............19

        1.  GE Properly Pleaded that the State is Liable under 42 U.S.C. §
            9607(a)(1), (2) as an Owner or Operator. ...........................................19

        2.  GE Properly Pleaded the State's Liability for Actions Taken at
            53 Luzerne Road in Arranging for the Disposal of Hazardous
            Substances ...........................................................................................24

    B.  GE's Recoupment Counterclaim Properly States a Cause of Action ........25

CONCLUSION ................................................................................................................25

**TABLE OF AUTHORITIES**

**CASES**

Page(s)

*AMW Materials Testing, Inc. v. Town of Babylon,*
584 F.3d 436 (2d Cir. 2009)................................................19, 20

*AngioDynamics, Inc. v. Biolitec, Inc.,*
606 F. Supp. 2d 300 (N.D.N.Y. 2009) .................................... 18-19

*Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico,*
270 F.3d 17 (1st Cir. 2001)...................................................8

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
968 F.2d 196 (2d Cir.1992)...................................................6

*Bd. of Regents of the Univ. of Wisc. Sys. v. Phoenix Int'l Software Inc.,*
653 F.3d 448 (7th Cir. 2011) ...............................................8

*Burnette v. Carothers,*
192 F.3d 52 (2d Cir. 1999), *cert. den.*, 531 U.S. 1052 (2000) .........7

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
2014 WL 4627248 (E.D. Cal., Sept. 16, 2014)......................21, 24

*Comm'r of Dep't of Natural Resources v. Century Alumina Corp.,*
2009 WL 1749952 (D. Virgin Isl., June 19, 2009) .....................11

*East Bay Mun. Util. Dist. v. United States Dep't of Commerce,*
142 F.3d 479 (D.C. Cir. 1998))...........................................23

*Fishbein v. Miranda,*
785 F. Supp. 2d 375 (S.D.N.Y. 2011)....................................16

*FMC Corp. v. United States Dep't of Commerce,*
29 F.3d 833 (3d Cir. 1994)...............................................23

*Gardner v. New Jersey,*
329 U.S. 565 (1947)..................................................... 6-7

*General Elec. Co. v. AAMCO Transmissions, Inc.,*
962 F.2d 281 (2d Cir. 1992)...........................................8-9, 24

*Gollomp v. Spitzer,*
568 F.3d 355 (2d Cir. 2009)...........................................18, 25

*Gunter v. Atl. Coast Line R.R Co.*,
  200 U.S. 273 (1906).................................................................................7

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987)..................................................................................5

*Hans v. Louisiana*,
  134 U.S. 1 (1890)....................................................................................7

*In re Charter Oak Ass.*,
  361 F.3d 760 (2d Cir.)..................................................................... *passim*

*In re Kaiser Group Int'l, Inc.*,
  399 F.3d 558 (3d Cir. 2004)...................................................................8

*In re Lazar*,
  237 F.3d 967 (9th Cir.), *cert. den.*, 434 U.S. 992 (2001) ...........................8, 12

*In re Sunrise Sec. Litig.*,
  818 F. Supp. 830 (E.D. Pa. 1993) .......................................................16

*Jones v. Ford Motor Credit Co.*,
  358 F.3d 205 (2d Cir. 2004)..................................................................8

*Lapides v. Bd. of Regents*,
  535 U.S. 613 (2002)................................................................................7

*Levine v. Landy*,
  860 F. Supp. 2d 184 (N.D.N.Y. 2012)...............................................18

*Machon v. Pa. Dep't of Pub. Welfare*,
  847 F. Supp. 2d 734 (E.D. Pa. 2012) ....................................................6

*Nu-West Mining Inc. v. United States*,
  768 F. Supp. 2d 1082 (D. Idaho 2011) ...............................................24

*Pa. v. Lockheed Martin Corp.*,
  681 F.3d 503 (3d Cir. 2012)............................................................ 11-12

*Pa. v. Lockheed Martin Corp.*,
  731 F. Supp. 2d 411 (M.D. Pa. 2010) ..................................................11

*Pa. v. Union Gas Co.*,
  491 U.S. 1 (1989).......................................................................... 12, 16-17

*Regents of the Univ. of N.M. v. Knight*,
  321 F.3d 1111 (Fed. Cir. 2003)..............................................................8

*Robinson v. Gov't of Malaysia*,
269 F.3d 133 (2d Cir. 2001) ........................................................................5

*Seminole Tribe of Fla. v. State of Fla.*,
517 U.S. 44 (1996) ........................................................................ *passim*

*State of New York v. City of Johnstown*,
701 F. Supp. 33 (N.D.N.Y. 1988) ...............................................10, 18, 24

*State of New York v. Oneida Indian Nation*,
2007 WL 2287878 (N.D.N.Y. 2007) .........................................................15

*Stillhoe v. Almy Bros.*,
782 F. Supp. 731 (N.D.N.Y. 1992) ...........................................................23

*Tuchman v. State of Conn.*,
185 F. Supp.2d 169 (D. Conn. 2002) ..........................................................6

*United States v. Allied Corp.*,
789 F. Supp. 93 (N.D.N.Y. 1992) .............................................................23

*United States v. Am. Color & Chem. Corp.*,
858 F. Supp. 445 (M.D. Pa. 1994) ............................................................13

*United States v. Atl. Research Corp.*,
551 U.S. 128 (2007) .............................................................................. 9-10

*United States v. Atl. Richfield Co.*,
2000 WL 33327310 (S.D. Tex., Dec. 19, 2000) ........................................10

*United States v. Dart Inds.*,
847 F.2d 144 (4th Cir. 1988) ...................................................................23

*United States v. Green*,
33 F. Supp. 2d 203 (W.D.N.Y. 1998) .......................................................13

*United States v. Hardage*,
750 F. Supp. 1460 (W.D. Okla. 1990) ................................................. 13-14

*United States v. Iron Mountain Mines, Inc.*,
881 F. Supp. 1432 (E.D. Ca. 1995) .....................................................12, 17

*United States v. Iron Mountain Mines, Inc.*,
952 F. Supp. 673 (E.D. Cal. 1996) ...........................................................12

*United States v. Keystone Sanitation Co.*,
867 F. Supp. 275 (M.D. Pa. 1994) ...........................................................17

*United States v. Mottolo,*
    605 F. Supp. 898 (D.N.H. 1985)........................................................ 10-11, 24

*United States v. Rohm & Hass Co.,*
    939 F. Supp. 1157 (D.N.J. 1996) ....................................................12, 13, 17

*United States v. Shell Oil Co.,*
    294 F.3d 1045 (9th Cir. 2002) .......................................................................23

*United States v. Smuggler-Durant Mining Corp.,*
    823 F. Supp. 873 (D. Colo. 1993).................................................................13

## UNITED STATES CONSTITUTION

U.S. Constitution, Amendment XI........................................................ passim

## FEDERAL STATUTES

42 U.S.C. § 9601-9675 ...................................................................................1

42 U.S.C. § 9601(9)......................................................................................21

42 U.S.C. § 9601(20)(A)......................................................................... 21-22

42 U.S.C. § 9601(20)(D)...............................................................................23

42 U.S.C. § 9601(21) ...................................................................................22

42 U.S.C. § 9606..........................................................................................10

42 U.S.C. § 9606(c)......................................................................................20

42 U.S.C. § 9607(a) ............................................................................ *passim*

42 U.S.C. § 9607(a)(1)............................................................................19, 22

42 U.S.C. § 9607(a)(2)............................................................................19, 22

42 U.S.C. § 9607(a)(3)...............................................................9, 10, 23, 24

42 U.S.C. § 9607(d)(1)..................................................................................21

42 U.S.C. § 9607(d)(2) ........................................................................ *passim*

42 U.S.C. § 9613.................................................................................. *passim*

42 U.S.C. § 9613(f)(1) ........................................................................................4, 9

40 C.F.R. § 300.130(i) .............................................................................................20

Fed.R.Civ.P. 12(b)(1) ................................................................................................5

Fed.R.Civ.P. 12(b)(6) ...................................................................................2, 18, 19

Fed.R.Civ.P. 12(f)(1) .................................................................................................6

Fed.R.Civ.P. 13(a)(1)(A) ..................................................................................1, 6, 8

Fed.R.Civ.P. 13(b) ...................................................................................................15

## **FEDERAL REGULATIONS**

40 C.F.R. § 300.130(i) .............................................................................................20

## **STATE STATUTES AND RULES**

ECL § 27-1305(2)(b)(2) ............................................................................................4

ECL § 27-1305(4)(b)(4) (1982) ................................................................................4

Defendant General Electric Company ("GE"), by its attorneys, Greenberg Traurig, LLP, submits this memorandum of law in opposition to the motion to dismiss GE's Counterclaims filed by plaintiffs State of New York, the New York State Department of Environmental Conservation ("DEC") and Joseph Martens, as Commissioner of DEC (collectively, "the State").

## PRELIMINARY STATEMENT

The State's Complaint seeks to hold GE solely liable under the Comprehensive Environmental Response, Contribution and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, for the State's costs to remediate two parcels on Luzerne Road in Queensbury that the State itself is largely responsible for polluting. GE has invoked Counterclaims to ensure that any allocation of liability takes account of the State's fair share of the costs, a share GE alleges the State must bear based on its careless handling of contaminated materials. The State incorrectly asserts in its brief that it is immune from claims under the Eleventh Amendment to the U.S. Constitution no matter how they are brought. *See* State's Brief in Support of Motion ("Pl. Br.") at 15-26. The Eleventh Amendment immunizes the State from *suit* in this Court but GE did not sue the State.[1] The State sued GE and, in so doing, waived its immunity to GE's Counterclaims.

In reviewing the State's brief, one must wade through a recitation of alleged facts derived from affidavits – which are not properly considered on a motion to dismiss – and a mostly irrelevant exposition of the Eleventh Amendment before getting to the crux of the State's theory: The State waived its Eleventh Amendment immunity by filing suit but only with respect to a novel and overly narrow test for "compulsory counterclaims" – a test, according to the State, GE's Counterclaims fail to meet. Pl. Br. at 22-26. GE, however, easily meets the test for "compulsory counterclaims," defined under Fed.R.Civ.P. 13(a)(1)(A) as any claim that "arises

---

[1] The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., amend. XI.

out of the transaction or occurrence that is the subject matter of the opposing party's claim."

At issue in this case is whether the State may recover from GE its costs of remediating hazardous substances released at the "Site," which consists of two distinct parcels located in the Town of Queensbury, Warren County: one at 51 Luzerne Road; and the other at 53 Luzerne Road. *See* GE's Counterclaims ("Countercl."), Sept. 26, 2014, ¶ 9. In 1979, the State constructed a hazardous waste landfill ("Landfill") on 51 Luzerne Road, removed hazardous waste from 53 Luzerne Road and other local properties, and disposed of the waste in the Landfill. *Id.* ¶¶ 12-13, 23, 28. The State then operated the Landfill for some 30 years, during which time its actions and inactions caused the release of hazardous substances to the environment. *Id.* ¶¶ 26, 28. Thus, GE's Counterclaims seek to hold the State liable in contribution for its actions that resulted in a significant part of the release of hazardous substances for which the State seeks to hold GE solely responsible. *Id.* There is no question that GE's Counterclaims arise out of the same transaction or occurrence that is the subject matter of the Complaint.

In any event, whether or not GE's Counterclaims are deemed "compulsory" or not is legally irrelevant because, under the controlling legal test in the Second Circuit, a state's waiver from filing suit encompasses "permissive counterclaims" that seek only an offset of the damages sought by the state. *See In re Charter Oak Ass.*, 361 F.3d 760, 769-70 (2d Cir.), *cert. den.*, 543 U.S. 955 (2004). GE's Counterclaims here clearly meet this test by seeking only to offset the amount of response costs already paid by the State. *See* Countercl. ¶¶ 31, 38, 40.

The State also makes a series of groundless arguments in support of the part of its motion asserting that GE failed to state a cause of action under Fed.R.Civ.P. 12(b)(6). Pl. Br. at 27-30. For example, the State claims to have acted within the defense of 42 U.S.C. § 9607(d)(2) of CERCLA, which is applicable only to "actions taken in response to an *emergency* created by the

release or threatened release of a hazardous substance generated by or from a facility *owned by a third party*." (Emphasis added). Section 9607(d)(2), however, has no applicability here, because the Landfill was owned and operated for 30 years by the State – not a third party, and the State's actions cannot be described as responding to an "emergency" within the meaning of CERCLA.

GE's counterclaims allege that by the mid-1980s the Landfill itself was the final remedy for hazardous substances taken from 53 Luzerne Road, and DEC permanently capped the contaminated areas on 53 Luzerne Road. Countercl. ¶¶ 16-18. The State's lawsuit seeks the costs of remediating both the Landfill and 53 Luzerne Road – when these parcels were already subject to a final, albeit failed, remedy. The State's claims are thus barred by the statute of limitations, and GE intends to so move at the appropriate time. But even if the State's claims are not time-barred, the State should bear a fair share of the costs of addressing the failure, because the State engineered, constructed and maintained the failure. The State's motion should thus be denied.

**STATEMENT OF FACTS**

The State's Complaint relates to two adjacent parcels in Queensbury, New York. Countercl. ¶ 9. The first is a former scrap yard owned from 1951 to 1976 by Richard Alkes and located at 53 Luzerne Road. *Id.*; Answer ¶ 10. The second is located at 51 Luzerne Road on which the State constructed a hazardous waste Landfill to dispose of hazardous substances taken from several properties, including from the former Alkes' scrap yard. Countercl. ¶¶ 9, 12, 23. Prior to 1979, there was no relationship of any kind between the two parcels. *Id.* ¶ 24.

On August 2, 1979, DEC informed the U.S. Environmental Protection Agency ("EPA") of its intent to design and construct the Landfill. *Id.* ¶ 10. The letter also informed EPA that PCB-contaminated materials found at 53 Luzerne Road and other local sites would be disposed at the Landfill. *Id.* By letter, dated October 23, 1979, EPA approved DEC's plan. *Id.* ¶ 11. In

1979, DEC thereafter excavated, transported and otherwise arranged for the disposal at the Landfill of PCB-contaminated materials from 53 Luzerne Road and the other local sites. *Id.* ¶ 12.

In 1982, DEC constructed a final cap on the portions of 53 Luzerne Road upon which it had conducted excavation activities in 1979. *Id.* ¶ 17. At the same time, DEC listed the Landfill, but not any portion of 53 Luzerne Road, in the Registry of Inactive Hazardous Waste Disposal Sites ("Registry") under Classification 4, meaning that it considered the Landfill to be "properly closed – requiring oversight." *Id.* ¶ 15-17; ECL § 27-1305(4)(b)(4) (1982). In 1986, DEC installed a permanent synthetic cap at the Landfill to ensure that the Landfill remained the final repository of the previously disposed hazardous waste. Countercl. ¶ 18. However, by around 1990, the cap had failed and the Landfill began leaching hazardous substances to the environment. *Id.* ¶ 23. At this point, DEC added the Landfill parcel (51 Luzerne Road) to a new site description in the Registry that included 53 Luzerne Road, calling the collective site the "Luzerne Road Site." *Id.* ¶ 20. DEC listed the collective Site under Classification 2, meaning it considered the Site to constitute a "[s]ignificant threat to the public health or environment – action required." Complaint ("Compl."), filed June 19, 2014, Exhibit ("Ex.") 8, at 3; ECL § 27-1305(2)(b)(2). Despite changing the site classification and listing, DEC did not initiate the second remediation of the Landfill and 53 Luzerne Road until sometime in 2008. Compl. ¶ 65.[2]

GE asserts Counterclaims (at ¶¶ 27-31) against the State pursuant to 42 U.S.C. § 9613(f)(1), which provides that "[a]ny person may seek contribution from any other person who is liable under section 9607(a) of this title, during or following any civil action under . . . section 9607(a)." Section 9607(a) creates four categories of "persons" who are liable for response costs associated with a release of a hazardous substance from a facility: (1) the current "owner" or "operator" of the facility; (2) a person who owned the facility at the time of disposal of a

---

[2] In its Answer, GE raised defenses, including that the State's Complaint is barred by the statute of limitations.

hazardous substance; (3) a person who "arranged for disposal" of hazardous substances at a facility; and (4) a person who transported the hazardous substances to the facility.

GE alleges that the State is liable under all four categories of "persons" under § 9607. Countercl. ¶ 29. As its First Counterclaim, GE alleges that the State is liable for an equitable share of the response costs with respect to the release of hazardous substances from both 51 Luzerne Road (the Landfill site) and 53 Luzerne Road. *Id.* ¶ 31. GE asserts as its Second Counterclaim that, while liability under CERCLA may be joint and several, there is a firm basis here to apportion the harm attributable to the "Site" based upon the State's longstanding mismanagement of the Landfill, resulting in the release of hazardous substances to the environment. *Id.* ¶¶ 35-37. Finally, as its Third Counterclaim, GE alleges that the State is liable, alternatively, under the doctrine of equitable recoupment and thus should pay for a fair share of clean-up costs attributable to its own liability. *Id.* ¶ 40.

**ARGUMENT**

**I.      GE's COUNTERCLAIMS ARE NOT BARRED BY THE
        ELEVENTH AMENDMENT TO THE U.S. CONSTITUTION**

**A.      The Court Must Accept the Averments of GE's Counterclaims as True**

The State argues (Pl. Br. at 14) that the Court may consider facts outside of the pleadings to determine whether it has subject matter jurisdiction over GE's Counterclaims pursuant to Fed.R.Civ.P. 12(b)(1). This is incorrect. "[S]ubject matter jurisdiction can be called into question *either* by challenging the sufficiency of the allegation *or* by challenging the accuracy of the jurisdictional facts alleged." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 68 (1987) (Scalia, J., concurring in the judgment) (citations omitted); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) (same). A court resolving a challenge to the sufficiency of the allegations must accept the factual allegations of the pleading as true and does

not consider evidence outside of the pleading. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992) (citations omitted); *see also Machon v. Pa. Dep't of Pub. Welfare*, 847 F. Supp. 2d 734, 743 (E.D. Pa. 2012) (examining claim of Eleventh Amendment immunity as challenge to sufficiency of allegations); *Tuchman v. State of Conn.*, 185 F. Supp. 2d 169, 171-72 (D. Conn. 2002) (same).

The State's argument that the Court lacks subject matter jurisdiction is based upon its claimed immunity from suit under the Eleventh Amendment. Pl. Br. at 15-26. This is a challenge to the sufficiency of GE's allegations. Under the State's theory, it waived its immunity with respect to only "compulsory counterclaims" (Pl. Br. at 22), defined as counterclaims "aris[ing] out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a)(1)(A). By definition, only GE's Counterclaims and the State's claims alleged in the Complaint are relevant to whether the Counterclaims are compulsory. Moreover, under controlling Second Circuit precedent, the State's waiver entitles GE to assert permissive counterclaims. Under either test, the State's affidavits are irrelevant and should be disregarded.[3]

**B.      By Commencing Suit under CERCLA, the State Waived its Sovereign Immunity with Respect to GE's Counterclaims**

The first portion of the State's brief, which provides a general discussion of jurisprudence related to the Eleventh Amendment, is relevant only with respect to the acknowledgement that a claim may be asserted against a state in federal court when the state waives its immunity from suit under the Eleventh Amendment. Pl. Br. at 15. Indeed, courts have universally held that a state voluntarily waives its immunity by filing a federal lawsuit, as the State has done here. In *Gardner v. New Jersey,* 329 U.S. 565 (1947), for example, the Supreme Court allowed a

---

[3] In addition to being irrelevant, the affidavits are based inappropriately upon a number of events that occurred well prior to the affiants' employment with the State and thus cannot have been based upon personal knowledge. For these reasons, the Court should strike the affidavits as "immaterial" pursuant to Fed.R.Civ.P. 12(f)(1).

bankruptcy trustee to proceed with its objections to a state's claim filed against the bankrupt estate because "the State waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Id.* at 674. The Court in *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), reaffirmed *Gardner* in the context of a state's removal of a diversity claim to federal court, holding that, "where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* at 619 (quoting *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906)).

*1. The Eleventh Amendment Applies Only to "Suits" Filed by Private Parties.*

The State misunderstands the Eleventh Amendment, believing that it applies to legal theories or statutory claims no matter how they are brought. This is incorrect. The Eleventh Amendment protects the states from being haled involuntarily into federal court. *Hans v. Louisiana*, 134 U.S. 1 (1890). Where a state voluntarily submits to federal court jurisdiction by filing suit, the Eleventh Amendment does not bar assertion of a counterclaim. The State argues that it "is immune from liability under [CERCLA] Section 113." Pl. Br. at 15. However, the State does not have to waive its immunity from suit specifically under section 113 of CERCLA, 42 U.S.C. § 9613. The question is whether the State has waived its immunity in *this* lawsuit. If so, GE may bring whatever claims it might otherwise have against the State.[4]

*2. The State Waived its Immunity to GE's Compulsory Counterclaims.*

The State concedes it has waived its immunity here from "compulsory counterclaims" by bringing this suit. Pl. Br. at 22. This is the test applied by most of the Circuits in determining

---

[4] The State's reliance on *Seminole Tribe of Fla. v. State of Fla.*, 517 U.S. 44 (1996) is misplaced because that case relates to Congress's authority to *abrogate* the states' Eleventh Amendment immunity by federal statute, not to the State's *voluntary waiver* of sovereign immunity at issue here. The State's citation to *Burnette v. Carothers*, 192 F.3d 52 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000), is also inapposite because the State in that case was sued as a defendant under CERCLA and did not, like here, voluntarily submit itself to the jurisdiction of the Court.

whether counterclaims against a state are permissible under the Eleventh Amendment. *See, e.g.,* *Bd. of Regents of the Univ. of Wisc. Sys. v. Phoenix Int'l Software Inc.*, 653 F.3d 448, 469-70 (7th Cir. 2011) (trademark infringement case); *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 567 (3d Cir. 2004) (bankruptcy case); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1124-25 (Fed. Cir. 2003) (patent infringement case); *Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 28 (1st Cir. 2001) (bankruptcy case); *In re Lazar,* 237 F.3d 967, 978 (9th Cir.), *cert. den.*, 434 U.S. 992 (2001) (same)*.*

As explained in *Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004), whether a counterclaim is compulsory "turns on whether the counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.'" *Id.* at 209 (quoting Fed.R.Civ.P. 13(a)(1)(A)).[5] The Second Circuit "consider[s] this standard met when there is a 'logical relationship' between the counterclaim and the main claim." *Id.* (citation omitted). The logical relationship test "does not require 'an absolute identity of factual backgrounds,'" only that "the 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id.*

To support its argument that GE's counterclaims are not compulsory, the State claims erroneously that the sole transaction at issue in the Complaint is GE's alleged arrangement for the disposal of hazardous substances at "the Alkes scrap yard" – formerly located on 53 Luzerne Road – "during the 1950s and 1960s." Pl. Br. at 7, 22. The subject matter of the Complaint, however, is much broader as it must be for the State to seek its full response costs for remediating releases of hazardous substances from the entire "Site" – both 53 and 51 Luzerne Road. *See General Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 285 (2d Cir. 1992)

---

[5] The court in *Jones* applied the test for "compulsory counterclaims" in determining whether the district court had supplemental jurisdiction over the defendant's state law counterclaims. *Id.* at 208.

(in "order to establish a prima facie case of CERCLA liability, a plaintiff must prove," *inter alia*, that it "incurr[ed] response costs in connection with" the release of hazardous substances). Indeed, were the State's claims limited to GE's alleged arrangement for the disposal of hazardous substances at 53 Luzerne Road alone, then the State could only seek recovery for its response costs associated with releases from that parcel – not from 51 Luzerne Road as well.[6]

As its first cause of action in the Complaint, the State alleges that GE is liable under 42 U.S.C. § 9607(a)(3) based upon the following: (i) GE arranged for the disposal of PCBs at the "Site"; (ii) PCBs are a hazardous substance; (iii) the release of hazardous substances "at and from the Site has caused contamination of the environment of the State"; and (iv) the "release of hazardous substances to the environment at and from the Site has caused the State to incur response costs . . . ." Compl. ¶¶ 70-76. The State further alleges that its actual remediation of the "Site" was not initiated until June 23, 2008. *Id.* ¶ 68. Thus, the subject matter of the lawsuit is the State's costs in responding to the release of hazardous substances at and from the "Site," which the State did not begin to remediate until 2008.

GE seeks through its Counterclaims an offset of the State's response costs related to the releases of hazardous substances from 51 Luzerne Road – the State-owned part of the "Site" – as well as from 53 Luzerne Road based upon the State's activities undertaken in 1979 at that parcel. *See* pp. 4-5, *supra.* By definition, a contribution claim under 42 U.S.C. § 9613(f)(1) arises from the same transaction or occurrence as the underlying § 9607(a) cost recovery claim; it addresses equitable allocation of the costs incurred in a single remediation. *See United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) ("[CERCLA] Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under

---

[6] GE would stipulate to dismissal of a portion of its Counterclaims if the State's claims were limited to its remediation of 53 Luzerne Road alone.

§ 106 or § 107(a)."). Since the Complaint seeks response costs associated with remediation of the entire "Site," GE's Counterclaims obviously fall within the same transaction and occurrence that is the subject matter of the Complaint.

Numerous cases not cited by the State have rejected the argument that the Eleventh Amendment bars CERCLA counterclaims similar to those asserted by GE here. In *State of New York v. City of Johnstown*, 701 F. Supp. 33 (N.D.N.Y. 1988), the State filed suit under CERCLA to recover its costs of "remedy[ing] the release or threatened release of hazardous substances at two [municipally owned] solid waste management facilities." *Id.* at 34.[7] The defendant filed a counterclaim, alleging that the State was liable under 42 U.S.C. § 9607(a)(3) "in that [it] either permitted or directed waste to be placed in the facilities." *Id.* at 36. The State, like here, argued that "it is immune from the common law contribution or indemnification action by the doctrine of sovereign immunity." *Id.* This Court held that "compulsory counterclaims such as this one can be asserted against a sovereign." *Id.* at 37. Of note, *In re Charter Oak Assocs.*, *supra*, was decided by the Second Circuit more recently than *City of Johnstown* and is controlling here. Thus, the State's waiver encompasses certain permissive counterclaims as well.

In *United States v. Atl. Richfield Co.*, 2000 WL 33327310 (S.D. Tex., Dec. 19, 2000), the defendants filed a counterclaim under CERCLA against the State of Texas, alleging that it "is responsible for releasing hazardous substances at the Site." *Id.* at *1. The parties did "not dispute that the counterclaim against the [state] arises out of the alleged disposal of pollutants at the [] Site, as does the main action against Defendants," and the court thus found that it had subject matter jurisdiction over the counterclaim. *Id.* at *3. As in *Atl. Richfield Co.*, the State here also disposed of hazardous substances at a facility. *See also United States v. Mottolo*, 605 F. Supp.

[7] The State cites *City of Johnstown* (Pl. Br. at 29) but only as an example of a defendant failing to state a cause of action under CERCLA based upon the allegation that a State arranged for the disposal of hazardous waste at a third party's landfill. As discussed at pp. 24-25 below, *City of Johnstown* is distinguishable on this point.

898, 910 (D.N.H. 1985) (counterclaim not barred where state "significantly contributed to the costs necessary for hazardous waste removal through its failure to adequately conduct and supervise the various clean-up operations" at site); *Comm'r of Dep't of Natural Resources v. Century Alumina Corp.*, 2009 WL 1749952, at *6 (D. Virgin Isl., June 19, 2009) (counterclaim not barred when based on allegation that government played "some role in bringing about the alleged pollution at issue"). However, the State's involvement here went well beyond the facts of these cases. GE does not merely allege that the State is responsible for the release of hazardous substances at issue based only on its disposal activities, which alone would be sufficient to support its claims, but also based on the State's construction, use, control, and, at all relevant times, ownership of the offending Landfill. *See* pp. 3-4 above.

None of the cases the State cites (Pl. Br. 21-25) support the argument that it is immune from GE's Counterclaims, and many do not stand for the propositions offered. The most glaring example of this is the State's reliance (Pl. Br. at 21) on *Pa. v. Lockheed Martin Corp.*, 731 F. Supp. 2d 411 (M.D. Pa. 2010) – a decision that the State neglected to note was vacated and remanded by *Pa. v. Lockheed Martin Corp.*, 681 F.3d 503 (3d Cir. 2012). The defendant in *Lockheed Martin* filed a counterclaim under CERCLA against the plaintiff Pennsylvania Dep't of Environmental Protection ("PADEP"), as well as a third party complaint against the Commonwealth of Pennsylvania and another state agency. While PADEP *admittedly* waived its Eleventh Amendment immunity, the lower court refused to extend the waiver to the two other state entities because they were "not originally named in the lawsuit." 731 F. Supp. 2d at 416-17. The Third Circuit vacated the judgment below based upon the state parties' concession "that if Lockheed is liable for cleanup costs under CERCLA, Lockheed can recover contribution from the Commonwealth and [the other state agency] for their allocable share of any costs Lockheed

must pay to PADEP." 681 F.3d at 508. Obviously, the Third Circuit's decision completely undercuts the State's position that it is immune from GE's Counterclaims.

Another example is *United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432 (E.D. Cal. 1995), which the State cites for the proposition that recoupment counterclaims are contrary to CERCLA's objectives. Pl. Br. at 25. In *Iron Mountain Mines*, the defendant filed counterclaims against the State of California under 42 U.S.C. § 9613(f)(1) asserting that the state was liable under CERCLA as an operator because it "actively participated in the operations" of a facility that became contaminated with hazardous substances leached from the defendant's mining operations. 881 F. Supp. at 1436. Notably, the State cites only the initial decision in the case but fails to mention that the district court ended up denying the state's motion to dismiss *in a later decision in the same case* on the ground that the defendant was authorized to file a CERCLA counterclaim "arising out of the same transaction or occurrence as the plaintiff's claim." *United States v. Iron Mountain Mines, Inc.*, 952 F. Supp. 673, 676 (E.D. Cal. 1996).[8]

The State cites *United States v. Rohm & Hass Co.*, 939 F. Supp. 1157 (D.N.J. 1996), as an example of a counterclaim being dismissed for alleging facts from an entirely different point in time. Pl. Br. at 24-25. That court, however, clearly examined the viability of the defendant's counterclaims under 42 U.S.C. §§ 9607(a) and 9613, although dismissing them for failure to state a cause of action. *See* 939 F. Supp. at 1160-61 (no allegation that state acted as "owner or operator" of contaminated landfill or "ever disposed of hazardous substances" at landfill). While the *Rohm & Hass* court also dismissed the defendant's recoupment counterclaim, that part of the

---

[8] The court initially (i) denied the state's motion to dismiss the defendant's CERCLA counterclaim on the ground that Congress had abrogated the states' Eleventh Amendment immunity under CERCLA, but (ii) dismissed the defendant's recoupment counterclaim as being outside of the scope of Congress's abrogation. 881 F. Supp. at 1443-45, 1456 (relying on *Pa. v. Union Gas Co.*, 491 U.S. 1 (1989)). After the Court in *Seminole Tribe of Fla. v. State of Fla.*, 517 U.S. 44 (1996), overruled *Union Gas Co.*, however, the district court revisited its earlier decision. *Iron Mountain Mines*, 952 F. Supp. at 674. Although the *Iron Mountain Mines* court ultimately allowed the CERCLA counterclaims to proceed under a recoupment-based test (*id.* at 678), it is clear that the test in the Ninth Circuit now is whether the counterclaim is compulsory. *See In re Lazar*, 237 F.3d at 978.

12

case was wrongly decided because it examined whether CERCLA itself authorizes recoupment counterclaims in a case filed by a state. Based upon *Seminole Tribe*, CERCLA does not abrogate the states' Eleventh Amendment immunity, making the statute irrelevant to a determination of the type of counterclaim a defendant may assert in a case filed by a state. *See* pp. 16-17 below.

In any event, the State wrongly conflates GE's third Counterclaim based on recoupment as providing the legal test applicable to GE's first two counterclaims under CERCLA. Pl. Br. at 23-25. It does not. As noted, the test applied in most circuits is whether the counterclaims are compulsory; while in the Second Circuit (discussed further below), the test is whether the counterclaims are permissive and seek at most an offset of a state's costs. Moreover, while recoupment and compulsory counterclaims are similar, the doctrine of recoupment is "an equitable doctrine that permits the defendant to assert [only] a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff." *Rohm & Hass*, 939 F. Supp. at 1162. Compulsory counterclaims are not defensive in nature.[9]

The State otherwise cites (Pl. Br. at 22, 23, 25) to several inapposite cases concerning counterclaims alleging that the United States negligently implemented the remediation of a hazardous waste site, which the courts in those cases ruled did not arise out of the original CERCLA cost recovery action. *See United States v. Green*, 33 F. Supp. 2d 203, 220 (W.D.N.Y. 1998) (counterclaim "alleg[ing] negligent actions of the EPA and its agents in performing removal and remediation at" site); *United States v. Am. Color & Chem. Corp.*, 858 F. Supp. 445, 453 (M.D. Pa. 1994) ("claims asserted by defendants based on alleged government negligence" in remediating site); *United States v. Hardage*, 750 F. Supp. 1460, 1519 (W.D. Okla. 1990)

---

[9] In a similar vein, the State mischaracterizes *United States v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873 (D. Colo. 1993), where the court simply dismissed a defense sounding in recoupment on the technical ground "that the proper form of such a claim would be to file a counterclaim or an independent action." *Id.* at 878. Here, GE properly asserted recoupment as a Counterclaim (at ¶¶ 39-40).

(counterclaim based on "alleged negligence by the EPA in connection with its remediation of the site"). Here, by contrast, GE's Counterclaims are not based on whether the State acted negligently in remediating a hazardous waste site; they are based on the State's direct actions as a polluter. The State seeks to obscure this issue by alleging that the releases for which it seeks response costs came from a generic "Site," rather than acknowledging that a major source of the contamination for which it seeks responses costs was the State-owned Landfill located on a parcel that it artificially incorporated into the "Site." *See* pp. 2-3 above.

      3.  *In the Second Circuit, the State's Waiver Also Encompasses GE's Counterclaims to the Extent Permissive.*

The Court of Appeals for the Second Circuit held in *In re Charter Oak Assocs.*, *supra*, that a state's waiver of immunity extends not only to compulsory counterclaims but also to permissive counterclaims. In that case, the Connecticut Dep't of Revenue Services ("DRS") filed a proof of claim against the bankrupt estate for unpaid taxes. The bankruptcy trustee determined that another Connecticut agency – the Dep't of Social Services ("DSS") – owed the debtor an amount of money less than the proof of claim amount, and thus asserted counterclaims against DSS seeking to offset the amount of money owed by the debtor to DRS; *i.e.*, the counterclaim did not arise out of the same transaction as DRS's proof of claim. 361 F.3d at 763-64. Acknowledging that "most circuits" have ruled that the scope of a state's waiver encompasses only "compulsory counterclaims," the court nevertheless ruled that "the scope of a state's waiver by litigation should extend" to "permissive counterclaims that are capped by a setoff limitation." *Id.* at 768-69. The court cited three reasons in adopting this approach: (i) "waiver in the litigation context rests upon the [Eleventh] Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness," particularly with respect to "achiev[ing] litigation advantages"; (ii) "[t]he setoff limitation protects the state's coffers because the state will never

be liable for paying anything"; and (iii) once a state agency has "voluntarily submitted itself to the court's jurisdiction . . . , there is no longer any danger that the state will be subjected to the 'indignity' of being haled into court – which is the primary concern of the Eleventh Amendment." *Id.* at 769-70 (internal citations omitted).[10]

This Court in *State of New York v. Oneida Indian Nation*, 2007 WL 2287878 (N.D.N.Y. 2007), applied *In re Charter Oak Assocs.* to a counterclaim filed in the context of a state action to enjoin the Oneida Indian Nation of New York from offering an electronic video game at its casino. *Id.* at *1. The State premised its suit on the claim that the video game violated the terms of a Compact between the two parties. *Id.* at *2. The Nation asserted a counterclaim seeking a declaration that an entirely different video game had been established in accordance with the Compact. *Id.* at *3. Although finding that the Nation's counterclaim was compulsory, the Court also allowed the counterclaim to proceed based upon the reasoning of *In re Charter Oak Assocs.*: (i) "[t]he Nation is not seeking an affirmative recovery"; (ii) "Plaintiffs initiated this action themselves"; and (iii) "equitable principles countenance against the Court allowing Plaintiffs to bring the Nation to court while permitting Plaintiffs to raise the immunity shield to prevent the Nation from asserting counterclaims . . . ." *Id.* at *8-9.

This Court should not depart from the holdings of *In re Charter Oak Assocs.* and *Oneida Indian Nation*. As in those cases, GE is not seeking any affirmative recovery – only an offset of response costs that the State has already paid, the State has voluntarily submitted itself to the Court's jurisdiction, and the State is seeking a litigation advantage here by asserting the precise claims against GE that it argues cannot be asserted against the State. Thus, as in those cases, the State's litigation waiver here encompasses "permissive counterclaims," defined under Fed.R.Civ.P. 13(b) to mean "any counterclaim that is not compulsory"; *i.e.*, the claims may arise

---

[10] The Second Circuit gave no indication that its holding was limited to the bankruptcy context.

outside of the transaction at issue in the Complaint. Because GE's Counterclaims meet the more stringent "same transaction and occurrence" standard applicable to compulsory counterclaims, they obviously meet the lesser threshold for permissive counterclaims.

### C. The Capacity in Which the State Plaintiffs Filed Suit is Irrelevant to a Determination of the Scope of the Waiver of Immunity

The State argues that it filed suit in a regulatory capacity and thus is immune from GE's counterclaims, which the State asserts were filed against the State in a different capacity. Pl. Br. at 23-24. The only cases it cites for this proposition, however, examined whether a defendant's counterclaims were properly filed against "an opposing party" in compliance with Fed.R.Civ.P. 13. *See Fishbein v. Miranda*, 785 F. Supp. 2d 375, 391 (S.D.N.Y. 2011) (claims asserted by plaintiffs as trustees of fund did not open them up to counterclaims filed against them as private parties); *In re Sunrise Sec. Lit.*, 818 F. Supp. 830, 836 (E.D. Pa. 1993) (FDIC can act as multiple corporate entities and as regulator; thus suit filed by one entity does not open up a different FDIC-entity to counterclaims that "are not directed at the party that brought th[e] action") (internal citation omitted). These cases are irrelevant to the State's claim of Eleventh Amendment immunity, standing instead for the unremarkable proposition that a defendant may only assert counterclaims against a specific opposing party named in the litigation, which GE clearly has done here by asserting Counterclaims against the precise parties that filed suit.[11]

The State then suggests without any legal citation (Pl. Br. at 24) that GE cannot assert counterclaims for actions taken by the State in a regulatory capacity. This argument is meritless, and seems to be based on a legal doctrine overruled by the Supreme Court in *Seminole Tribe of Fla. v. State of Fla.*, 517 U.S. 44 (1996). As the State correctly notes (Pl. Br. at 17), *Seminole Tribe* overruled the decision in *Pa. v. Union Gas Co.*, 491 U.S. 1 (1989), where the Supreme

---

[11] Under Rule 13, GE would not be allowed, for example, to assert counterclaims against Joseph Martens in his personal capacity because he is named as a plaintiff in this lawsuit only in his capacity as Commissioner of DEC.

Court had previously held that Congress abrogated the states' Eleventh Amendment immunity under CERCLA. However, there are several district court decisions from the period between when *Union Gas* and *Seminole Tribe* were decided, which found that Congress's supposed abrogation of the states' Eleventh Amendment immunity under CERCLA did not include actions taken by a state agency in a regulatory capacity. These courts held that states retained their immunity from suit over their regulatory activities. *See*, *e.g.*, *Rohm & Hass*, 939 F. Supp. at 1161-62 (examining whether there "is a sufficient waiver in the context of CERCLA's very unique and restrictive regulatory structure" to encompass claims against the government) (quoting *United States v. Keystone Sanitation Co.*, 867 F. Supp. 275, 282-83 (M.D. Pa. 1994)).[12]

Any decision that attempted to delimit the scope of Congress's abrogation of the states' Eleventh Amendment immunity based on CERCLA is obviously stale. Because CERCLA does not abrogate the states' immunity, the language of the statute is irrelevant to any inquiry regarding the extent a state waives its immunity from suit. After *Seminole Tribe*, filing suit against a private party is the primary mechanism by which a state waives its Eleventh Amendment immunity. It is for this reason that the jurisprudence with respect to the scope of a state's waiver by litigation mostly post-dates the decision in *Seminole Tribe*.[13] In the context of filing suit, a state waives its immunity to, at minimum, compulsory counterclaims. The application of the test for compulsory counterclaims does not vary based on the subject matter of the lawsuit as evidenced by the numerous contexts in which the test has been applied (*e.g.*, bankruptcy, trademark and patent infringement, interpreting a Compact, CERCLA). The capacity in which a state files suit is irrelevant to this inquiry.

---

[12] Although *Rohm & Haas* was issued shortly after *Seminole Tribe*, the court relied only on *Keystone Sanitation* and the initial decision in *Iron Mountain Mines*, both of which pre-dated *Seminole Tribe. See* 939 F. Supp. at 1161-63.

[13] Prior to *Seminole Tribe*, many courts found that the Commerce Clause provided Congress with power to abrogate the states' Eleventh Amendment immunity, and many statutes like CERCLA were seen as providing the legal basis for a private party to file a direct lawsuit against a state. The Court in *Seminole Tribe* overruled that doctrine.

In sum, whether viewed under binding Second Circuit and District precedent or holdings of courts from other parts of the country, there is no question that the State's waiver from filing suit here encompasses GE's Counterclaims.

## II. THE NEW YORK COURT OF CLAIMS ACT DOES NOT BAR GE's COUNTERCLAIM BASED ON RECOUPMENT

The State also wrongly argues that GE is barred under the New York Court of Claims Act ("CCA") from asserting as its Third Counterclaim a tort sounding in equitable recoupment. Pl. Br. at 19-20. As made clear in *Gollomp v. Spitzer*, 568 F.3d 355 (2d Cir. 2009), cited by the State for a contrary proposition, "the New York Court of Claims is the exclusive forum . . . for litigating claims *for money damages* against the State." *Id.* at 357, n. 2 (emphasis added). Recoupment is an equitable claim and thus not subject to the bar under the CCA. The secondary question raised by the State concerning whether GE's recoupment claim relates to "discretionary" actions of the State is a question of fact, and not related to any immunity the State may have under the CCA. *See City of Johnstown*, 701 F. Supp. at 38 ("premature to decide whether [recoupment] claim . . . would have merit, because the Court does not know" if State owes "a specific duty to defendant.").

## III. GE's COUNTERCLAIMS STATE A CAUSE OF ACTION

The State next argues that GE's Counterclaims should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action. Under this part of the State's motion, the Court must accept GE's factual allegations as true and draw all reasonable inferences in GE's favor. *See Levine v. Landy*, 860 F. Supp. 2d 184, 190 (N.D.N.Y. 2012) (in deciding motion to dismiss pursuant to Rule 12(b)(6), "counter-claimants' [] factual allegations must be accepted as true and all reasonable inferences must be drawn in their favor to assess whether a plausible claim for relief has been stated"); *see also AngioDynamics, Inc. v. Biolitec, Inc.*, 606 F. Supp. 2d 300, 303

(N.D.N.Y. 2009) ("court must accept all allegations in the counterclaims as true and draw all inferences in the light most favorable to the non-moving party"). A party seeking dismissal pursuant to Rule 12(b)(6) must overcome a "substantial" burden because "the question presented by such a motion is not whether the plaintiff is ultimately likely to prevail, but whether the claimant is entitled to offer evidence to support the claims." *Id.* (internal citations omitted).

### A.     GE's CERCLA Counterclaims Properly State a Cause of Action

> *1.   GE Properly Pleaded that the State is Liable under 42 U.S.C. § 9607(a)(1), (2) as an Owner or Operator.*

In seeking dismissal of GE's first two Counterclaims under CERCLA, the State relies (Pl. Br. at 27-28) primarily on the defense from liability for a "State or local government" regarding its "costs or damages as a result of actions taken in response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by a third party." 42 U.S.C. § 9607(d)(2). This defense does not apply to "liability for costs or damages as a result of gross negligence . . . by the State or local government." *Id.* Further, as a defense to liability, the State bears the burden of proof regarding the application of § 9607(d)(2). *See AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 449-50 (2d Cir. 2009) (burden on state or local government to prove "(d)(2) affirmative defense").

The defense under § 9607(d)(2) is unavailable to the State with respect to its ownership of the Landfill for several reasons. First, GE's Counterclaims are based, in part, upon the allegation that the State is liable under § 9607(a)(1) and (2) as the long-term owner and operator of the Landfill at which it disposed of hazardous substances, which constituted a major part of the release of hazardous substances for which the State seeks response costs. *See* pp. 3-5 above. Thus, under GE's pleadings, "the release or threatened release of hazardous substance[s]" associated with the State's remediation were "generated by or from a facility owned" by *the*

*State*, not "a third party" – as required under the plain language of § 9607(d)(2). The decision in *AMW Materials Testing*, which the State cites for a contrary proposition (Pl. Br. at 27), interpreted § 9607(d)(2) in this precise manner, emphasizing that "state and local governments cannot avoid § 9607(a) liability for hazardous material releases that occur in the course of responses to emergencies at sites they own." 584 F.3d at 446. Accordingly, as a matter of law, the defense under § 9607(d)(2) is inapplicable to any actions taken by the State at the Landfill.

Second, the term "emergency" as used under § 9607(d)(2) plainly does not encompass the cleanup of an improperly designed and leaking landfill that was constructed and managed by a state. The governing regulation – the National Contingency Plan ("NCP") – uses the term "emergency" in relation to the release of hazardous substances *only* when such release is "caused by a natural disaster or other catastrophic event." 40 C.F.R. § 300.130(i). Section 106(c) of CERCLA, 42 U.S.C. § 9606(c), enumerates "emergency" response authorities, and they are all under *other* statutes. Indeed, the State cites only to *AMW Materials Testing* in support of its reading of § 9607(d)(2), but that case was about an "emergency response to a 2000 fire that destroyed the [Plaintiff's] building." 584 F.3d at 440. Thus, although § 9607(d)(2) may protect emergency responders in addressing a catastrophic event, it does not protect the State from negligent Landfill construction and operation resulting in the leakage of hazardous substances.

Third, the Complaint lacks the factual predicate for the Landfill constituting an "emergency" under any meaning. For example, the Complaint attaches a declaration issued in 1979 by the State Commissioner of Health, stating that "there exists a condition dangerous to life and health resulting from" certain inactive hazardous waste sites, but neither 51 nor 53 Luzerne Road were included in the list of sites subject to the declaration. Compl., Ex. 3, at 2-3. Further, as of 1982, DEC listed the Landfill on its Registry as "properly closed – requiring oversight"

(Countercl. ¶¶ 16-17), which shows that, by 1982, the State considered the Landfill to constitute a final remedy – not an emergency. GE also pleaded the self-evident point that "[t]he State's actions in operating and maintaining the Landfill . . . were not taken in response to an emergency created by the release or threatened release of a hazardous substances." *Id.* ¶ 23.

Finally, DEC ultimately allowed hazardous substances to leach from the Landfill starting in or around 1990, which shows, as pleaded in GE's Counterclaims (at ¶ 26), that DEC's actions were grossly negligent. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 2014 WL 4627248 (E.D. Cal., Sept. 16, 2014) at *4 (pleadings regarding gross negligence "contain sufficient facts to support" counterclaims against state agency).

The State next invokes CERCLA's defense for non-negligent actions taken by a "person" in "rendering care, assistance, or advice in accordance with the [NCP]." Pl Br. at 28 (citing 42 U.S.C. § 9607(d)(1)). By its terms, this defense is irrelevant to the State's actions as the owner and operator of a facility that directly discharged hazardous substances to the environment; *i.e.,* the State's actions were taken as a facility owner *not* in rendering any care to a third party. GE nevertheless pleaded that the State both acted negligently in how it managed the Landfill and failed to act in a manner consistent with the NCP. *See* Countercl. ¶ 26; Answer ¶¶ 74, 115.

The State then makes the illogical argument (Pl. Br. at 28-29) that (i) its "placement" of hazardous waste in the Landfill does not constitute "disposal," and (ii) the Landfill (which it calls a "containment cell") is not a "facility" because it was "well-designed." This argument is easily disposed of based upon the plain language of CERCLA. The term "facility" is defined to include any "landfill" or "installation . . . where a hazardous substance has been deposited, stored, disposed of, or *placed* . . . ," with no exclusion based upon how a facility is designed. 42 U.S.C. § 9601(9)(emphasis added). The term "owner or operator" is defined to mean, *inter alia*, "any

person who owned, operated, or otherwise controlled activities at [a] facility," while the term "person" includes any "State" or "political subdivision of a State." *Id.* § 9601(20)(A), (21). Accordingly, even under the State's theory that it only "placed" hazardous substances in a properly designed "containment cell," it cannot escape liability under § 9607(a)(1) and (2).

Furthermore, irrespective of how it designed the Landfill, as the State admits, the Landfill itself began "leaking" hazardous substances to the environment in the 1990s. Compl. at ¶ 52. The State attached to the Complaint a copy of a Record of Decision, dated March 2005, which provided an abridged history of the "containment cell" (*i.e.*, Landfill) as follows:

> From 1979 to 1985, water that collected at the bottom of the containment cell was pumped out and transported off-site for treatment. In 1985, the leachate removal concluded with the addition of an engineered cover over the cell. However, liquid remained in the cell and was monitored over the next ten years. *In 1995, the liquid level in the cell was observed to drop.*

Compl., Ex. 8, at 4 (emphasis added). In other words, the State allowed PCB-contaminated leachate to discharge from the Landfill into the surrounding environment. GE believes that the State knew or should have known about the Landfill leaks well prior to 1995 and plans to explore this issue in discovery. Nevertheless, it is already irrefutable that DEC allowed the Landfill – a facility the State owned and controlled – to release hazardous substances to the environment for years.

The State asserts again, though in the context of its Rule 12(b)(6) argument, that it can evade liability as an owner or operator to the extent it acted as a "regulator." Pl. Br. at 29. There are no provisions of CERCLA, however, that create a blanket exemption to liability for actions of a state taken in a regulatory capacity. To the contrary, the definition of "owner or operator" establishes that "a State . . . shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity,

including liability under section 9607 of this title." 42 U.S.C. § 9601(20)(D). Several Courts of Appeals have held that CERCLA specifically does not bar claims against the government for actions taken in a regulatory capacity. *See United States v. Shell Oil Co.*, 294 F.3d 1045, 1053 (9th Cir. 2002) (statute "does not, on its face, 'suggest a distinction between the 'exercise of private . . . and regulatory powers'") (quoting *East Bay Mun. Util. Dist. v. United States Dep't of Commerce*, 142 F.3d 479, 482 (D.C. Cir. 1998)); *FMC Corp. v. United States Dep't of Commerce*, 29 F.3d 833, 840-41 (3d Cir. 1994) (en banc) ("if the United States, even as a regulator, operates a hazardous waste facility or arranges for the treatment or disposal of hazardous wastes, it should be held responsible for cleanup costs . . ."). As already noted, the only defense applicable specifically to a state is § 9607(d)(2) and that defense is unavailable here. Moreover, as the State acknowledges (Pl. Br. at 2, 5, 19), liability under CERCLA is "strict," meaning that the State's intent as the owner or operator of the Landfill is irrelevant.[14]

The cases the State cites for a contrary conclusion (Pl. Br. at 28-29) are inapposite. The issue in both *Stillhoe v. Almy Bros.*, 782 F. Supp. 731, 732 (N.D.N.Y. 1992), and *United States v. Dart Inds.*, 847 F.2d 144, 146 (4th Cir. 1988), was whether the state's environmental agency could be held liable for its actions in remediating a third party's site, not for the direct release of hazardous substances from a state-owned facility, which is the issue here. The decision in *United States v. Allied Corp.*, 789 F. Supp. 93 (N.D.N.Y. 1992), stands for the simple proposition that the government *can* be liable as under § 9607(a)(3) for generating and disposing of hazardous substances at a third-party's site. *Id.* at 98. This holding does not mean that the government cannot also be held liable as an owner or operator of a facility, and the State here was responsible for disposing of hazardous substances at the Landfill, in any event.

---

[14] GE in no way concedes that the State owned the Landfill in a purely regulatory capacity. The State pleaded in the Complaint (¶ 5) that it brought this suit in a "sovereign" capacity, and it is in that capacity that the State owns 51 Luzerne Road.

*2. GE Properly Pleaded the State's Liability for Actions Taken at 53 Luzerne Road in Arranging for the Disposal of Hazardous Substances.*

GE properly pleaded the State's liability under 42 U.S.C. § 9607(a)(3) with respect to arranging for the disposal of hazardous substances at 53 Luzerne Road: "[T]he State, through its own actions or through the actions of third parties under its direction, removed capacitors from 53 Luzerne Road in such manner as to cause the capacitors to puncture and leak which, in turn, caused the release of PCBs into soils located at 53 Luzerne Road." Countercl. ¶ 13. This is more than enough to properly plead liability under § 9607(a)(3). *See Jim Dobbas, Inc.*, 2014 WL 4627248 at *2-3 (counterclaim may proceed when based upon allegation that state "mismanaged cleanup efforts at the remediation sites and is therefore liable" under CERCLA); *Nu-West Mining Inc. v. United States*, 768 F. Supp. 2d 1082, 1088 (D. Idaho 2011) (government liable under § 9607(a)(3) irrespective of whether it acted in a "purely regulatory capacity"); *Mottolo*, *supra*. While GE also pleaded that the State's actions in this respect constituted gross negligence (Countercl. ¶ 26), as already noted, the affirmative defense under 42 U.S.C. § 9607(d)(2) is unavailable because there was no "emergency" at 53 Luzerne Road. Indeed, CERCLA itself was not enacted until 1980 – *after* the State's initial action at 53 Luzerne Road.

Finally, the State cites *City of Johnstown* as holding that the government cannot be liable for arranging for the disposal of hazardous substances that it does not own (Pl. Br. at 29), but that was *not* the standard applied in the case. Instead, this Court applied the controlling standard in the Second Circuit: "[T]here has to be some nexus between the allegedly responsible person and the owner of the hazardous substances before a party can be held liable under 42 U.S.C. § 9607(a)(3)." 701 F. Supp. at 36; *see also See General Elec. Co.*, 962 F.2d at 286 (to prove arranger liability "[t]here must be some nexus between the potentially responsible party and the disposal of the hazardous substance"). That nexus was clearly pleaded in GE's Counterclaims (at

¶ 14): "DEC acknowledged 'that General Electric was not notified prior to, nor has General Electric ever been in any way a party to *the Department's removal of soils and debris* from property in the West Glens Falls area and the Department's design and construction of the West Glens Fall disposal site for the placement of these soils and debris.'" (Quoting September 24, 1980 letter from DEC) (emphasis added). DEC thus acknowledged at the time in question that it was entirely responsible for the events surrounding its removal of hazardous substances from 53 Luzerne Road. *Id.* ¶ 13. The State is also responsible for the associated release of hazardous substances at that parcel resulting from its actions. GE anticipates exploring this issue in discovery and should not be deprived from doing so at this point in the litigation.

### B.     GE's Recoupment Counterclaim Properly States a Cause of Action

With respect to GE's third cause of action, the State argues (Pl. Br. at 30) only that claims sounding in recoupment must be filed in the Court of Claims. However, as noted in *Gollomp*, *supra*, the Court of Claims has jurisdiction only over "money damages." Recoupment is an equitable doctrine and a recoupment claim may be filed in courts of equity. *See* p. 18 above.

### CONCLUSION

Based upon the foregoing, the Court should deny the State's motion to dismiss.


Dated:   January 14, 2015                                     **GREENBERG TRAURIG, LLP**
         Albany, New York

                                                 By:     /s/Robert M. Rosenthal
                                                       ROBERT M. ROSENTHAL
                                                       Bar Roll No.:  510013
                                                       *Attorneys for Defendant*
                                                       54 State Street, 6th Floor
                                                       Albany, New York 12207
                                                       Tel:  (518) 689-1400
                                                       Email:  rosenthalrm@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2015, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following attorneys representing Plaintiffs State of New York, the New York State Department of Environmental Conservation ("DEC") and Joseph Martens, as Commissioner of DEC:

1. Maureen F. Leary

2. Joseph M. Kowalczyk

3. Lisa Burianek.

/s/Robert M. Rosenthal
ROBERT M. ROSENTHAL