# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, THE NEW YORK
STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and JOSEPH MARTENS, as
Commissioner of the New York State
Department of Environmental Conservation,

                **Plaintiffs,**

      **v.**

GENERAL ELECTRIC COMPANY,

                **Defendant.**

Case No. 1:14-cv-747
(GTS/CFH)

---

## STATE OF NEW YORK'S
## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS
## GENERAL ELECTRIC'S COUNTERCLAIMS

**ERIC T. SCHNEIDERMAN**
Attorney General of the
 State of New York
Attorney for Plaintiffs
Environmental Protection Bureau
The Capitol
Albany, New York 12224
518-776-2411

LEMUEL M. SROLOVIC
MAUREEN F. LEARY
JOSEPH M. KOWALCZYK
Assistant Attorneys General

      Of Counsel

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT

POINT I

    THE STATE IS IMMUNE FROM LIABIILTY AND
    HAS NOT WAIVED THAT IMMUNITY ......................................................... 1

    A.  The State Has Not Waived Its Eleventh Amendment or Sovereign
        Immunity to GE's Counterclaims By Filing This Action ............................ 2

    B.  The Statutory Waiver of State Immunity in Bankruptcy Proceedings
        Does Not Apply Here ...................................................................................... 7

    C.  GE's Counterclaims Are Not Compulsory Because They Do Not Arise
        From the Same Transaction and Occurrence.

POINT II

    GE'S CERCLA COUNTERCLAIMS FAIL TO STATE A CLAIM .................. 11

    A.  GE'S CERCLA Counterclaims Do Not Plead Facts to Support a
        *Prima Facie* Showing that the State is a Liable Party Under
        CERCLA Section 107(a) ............................................................................... 12

    B.  GE's CERCLA Counterclaims Fail to State a Claim to the Extent They
        Seek a Reduction in GE's Liability ............................................................. 17

POINT III

    GE FAILS TO STATE A COMMON LAW CLAIM FOR PUBLIC
    NUISANCE ...................................................................................................... 17

CONCLUSION............................................................................................................. 18

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................... 15

*Burnette v. Carothers,*
  192 F.3d 52 (2d Cir. 1999) ........................................................... 6 fn3

*California v. Deep Sea Research,*
  523 U.S. 491 (1998) ........................................................................ 3 fn1

*California Department of Toxic Substances v. Dobbas,*
  2014 WL 4627248 (Ed. Cal. Sept. 16, 2014).................................... 13

*Central Virginia Community College v. Katz,*
  546 U.S. 356 (2006) ....................................................................... 8 fn6

*Cohens v. Virginia,*
  19 U.S. 264 (1821) ............................................................................. 6

*College Savings Bank v. Florida,*
  527 U.S. 666 (1999) ........................................................................ 3 fn1

*FMC Corp. v. U.S. Department of Commerce,*
  29 F.3d 833 (3d Cir. 1994) ......................................................... 12, 13

*Gardner v. New Jersey,*
  329 U.S. 565 (1947) ...................................................................passim

*General Electric v AAMCO,*
  962 F. 2d 281 (2d Cir. 1992) ...................................................... 6, 13

*In re Paoli Rail Yard PCB Litigation,*
  790 F. Supp. 94, *aff'd.* 980 F. 2d 724 (3d Cir. 1992) ................... 12 fn8

*James v. Wormuth,*
  21 N.Y.3d 540 (2013)....................................................................... 15

*Lapides v Board of Regents,*
  535 U.S. 613 (2002) ...................................................................passim

*Nassau Smelting & Refining Works, Ltd. v. United States,*
  266 U.S. 101 (1924)............................................................................ 2

*New York Trap Rock Corp. v. Town of Clarkstown,*
 299 N.Y. 77 (1989) ............................................................... 17

*Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.),*
 361 F.3d 760 (2d Cir. 2004) .......................................... 8, 10

*Seminole Tribe of Florida v. State of Florida,*
 517 U.S. 44 (1996) ......................................................passim

*Sibbach v. Wilson & Co.,*
 312 U.S. 1 (1941) .................................................................. 9

*State of New York v. City of Johnstown,*
 701 F. Supp. 33 (N.D.N.Y. 1988) .................................. 12 fn8, 13, 14

*State of New York v. Next Millennium,*
 732 F.3d 117 (2d Cir. 2013) .................................... 16 fn9, 18

*State of New York v. Oneida Indian Nation,*
 2007 WL 2287878 (N.D.N.Y. 2007) ................................. 10

*State of New York v. Shore Realty Corp.,*
 759 F.2d 1032 (2d Cir. 1985) ........................................... 17

*Stilloe v. Almy Bros.,*
 782 F. Supp. 731 (N.D.N.Y. 1992) ........................ 12 fn8, 13

*Tennessee Student Assistance Corporation v. Hood,*
 541 U.S. 440 (2004) ............................................................. 7

*United States v. American Color and Chemical Corp.,*
 858 F. Supp. 445 (M.D. Pa. 1994) ............................... 12 fn8

*United States v. American Color and Chemical Corp.,*
 885 F. Supp. 111 (M.D. Pa. 1995) ........................ 12 fn8, 14

*United States v. Atlas Minerals,*
 797 F. Supp. 411 (E.D. Pa. 1992) .......................... 12 fn8, 14

*United States v. Azrael,*
 765 F. Supp. 1239 (D. Md. 1991) ............................... 12 fn8

*United States v. Dart Industries,*
847 F. 2d 144 (4th Cir. 1988) ................................................................. 12 fn8

*United States v. Forma,*
42 F.3d 759, 764-65 (2d Cir. 1994) ............................................... passim

*United States v. Green,*
33 F. Supp. 2d 203 (W.D.N.Y. 1998) ............................. 10, 12 fn8, 13

*United States v. Rohm & Haas,*
939 F. Supp. 1157 (1996) ........................................................ 5, 12 fn8

*United States v. Shaw,*
309 U.S. 495 (1940) ............................................................................. 4

*United States v. Silverton,*
200 F.2d 824 (1st Cir. 1952) ............................................................. 3

*United States v. Western Processing,*
761 F. Supp. 725 (W.D. Wash. 1991) ......................................... 12 fn8

*United States v. Wissahickon Tool Works, Inc.,*
200 F.2d 936 (2d Cir. 1952) ............................................................. 2

*Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,*
263 U.S. 629 (1924) .................................................................. 9, 12 fn8

*Wyoming Department of Transportation v. Straight,*
143 F. 3d 1387 (10th Cir. 1998) ..................................................... 7 fn4

**UNITED STATES CONSTITUTION**
Article I, § 8, cl. 3 .................................................................................. 8
Article I, § 8, cl. 4 .................................................................................. 8

**FEDERAL STATUTES**
Bankruptcy Code
11 U.S.C § 106 ..................................................................................... 7

Comprehensive Environmental Response, Contribution and Liability Act ("CERCLA")
§ 101(9) .............................................................................................. 14
§ 101(20) ............................................................................................ 16
§ 101(23) ............................................................................................ 16
§ 107 ......................................................................................... 4 fn2, 12

iv

Comprehensive Environmental Response, Contribution and Liability Act
("CERCLA")

§ 107(a) ................................................................................passim
§ 107(b) ...................................................................................... 4
§ 107(d)(2)............................................................................ 15, 16
§ 113.................................................................................... 1, 6, 12
§ 113(f) ...............................................................................passim

Code of Federal Regulations ("CFR")

40 CFR § 300.130(i)................................................................ 16

28 U.S.C

§ 723....................................................................................9 fn7
§ 2072..................................................................................9 fn7
§ 2701..................................................................................... 10

42 U.S.C.

§ 9601(9) .............................................................................. 14
§ 9601(29) ............................................................................ 14
§ 9607(a) .............................................................................. 14
§ 9607(a)(1) − (4)(A) .............................................................. 4
§ 9607(b)(1)-(4) ...................................................................... 4
§ 9613(f) ................................................................................. 4

**FEDERAL RULES**
Federal Rules of Civil Practice ("FRCP")

12(b)(1)..................................................................................... 1
12(b)(6)................................................................................... 11
13(a) ................................................................................... 9, 10
82 ......................................................................................9 fn7

**STATE STATUTES**
Court of Claims Act

§ 9(2) ....................................................................................... 4

**MISCELLANEOUS**

Prosser and Keeton, Torts § 39 at 244 (5th ed.) ............................ 15

## PRELIMINARY STATEMENT

The State of New York submits this reply memorandum of law in further support of its motion to dismiss General Electric Company's ("GE's") CERCLA and common law counterclaims. These claims are barred by sovereign immunity and the State has not waived its immunity. The counterclaims are jurisdictionally defective and otherwise fail to state cognizable claims. F.R.C.P. 12(b)(1) and (6). For the reasons set forth below and in the State's opening brief and supporting affidavits, GE's counterclaims should be dismissed.

## ARGUMENT

## POINT I

## THE STATE IS IMMUNE LIABIILTY AND HAS NOT WAIVED THAT IMMUNITY

GE's first and second counterclaims allege that the State is liable to GE for response costs as an owner/operator and arranger under CERCLA Section 107(a), and further allege that the State is liable to GE for contribution under Section 113(f) (Counterclaim, pp. 12-18). In its third counterclaim, GE asserts that the State is liable for allegedly creating a public nuisance under a common law theory (Counterclaim, p. 18, ¶ 40). In its demand for relief, GE's asks the court to dismiss the State's complaint, to declare the State liable to GE for past and future response costs and damages to the extent exceeding GE's share, to award an equitable offset of response costs, to issue a judgment that will be binding in any action by or against the State, and to award attorneys' fees and costs (Counterclaim, pp. 18-19).

GE's counterclaims are the very kind of affirmative claims that cannot be asserted against the State under the Supreme Court's decision in *Seminole Tribe* or under the principles of sovereign immunity. The State is immune from the liability sought in GE's counterclaims and has not waived that immunity by filing this action.

A. The State Has Not Waived Its Eleventh Amendment or
   Sovereign Immunity to GE's Counterclaims By Filing This Action.

GE concedes that under *Seminole Tribe,* a State cannot be subject to CERCLA liability absent a waiver (GE Brief, p. 17). Nevertheless, GE asserts that the State has waived its immunity by filing this action (GE Brief pp. 6-13). In asking this Court to exercise jurisdiction over the State's CERCLA claims against GE, the State does not broadly waive its immunity as to GE's CERCLA and common law counterclaims. *United States v. Forma*, 42 F. 3d 759, 764-65 (3d Cir. 1994),

The Court in *Forma* explained the limitations of the court's jurisdiction to entertain counterclaims against a sovereign for either affirmative relief or monetary offset - even when the sovereign files suit:

> Courts might very well have developed a rule that when the Government starts a suit, it fully waives sovereign immunity as to all counterclaims, or at least as to those counterclaims arising from the same transactions as the Government's claims….
>
> But case law has quite clearly established the contrary. "Jurisdictional limitations based on sovereign immunity apply equally to counterclaims against the Government, *United States v. Wissahickon Tool Works, Inc.*, 200 F. 2d 936, 939 (2d Cir. 1952), and jurisdiction for a "suit against the United States . . . *whether it be in the form of an*

> *original action or a set-off or a counterclaim* . . . does not
> exist unless there is specific congressional authority for
> it." *Nassau Smelting & Refining Works, Ltd. v. United*
> *States*, 266 U.S. 101, 106, 69 L. Ed. 190, 45 S. Ct. 25
> (1924).  And, "it is clear that the United States, by filing
> [an] original complaint . . . [does] not thereby consent to
> be sued on a counterclaim based upon a cause of action as
> to which it had not otherwise given its consent to be
> sued." *United States v. Silverton,* 200 F. 2d 824, 826 (1st
> Cir. 1952).

42 F. 3d at 764-65 (emphasis added).

Although the *Forma* court recognized the development of case law excepting

from sovereign immunity certain defensive offset-related counterclaims, it

specifically held that a separate explicit waiver of immunity was necessary for any

claims that requested affirmative recovery from the sovereign.  42 F. 3d at 765

("…it has long been absolutely clear that the [offset] exception does not permit any

affirmative recovery against the United States on a counterclaim that lacks an

independent jurisdictional basis").[1]

Thus, GE's counterclaims seek the kind of affirmative relief against the State

for which there has been no waiver.  In demanding CERCLA and common law

liability declarations, judgment against the State for GE's response past and future

costs and damages exceeding GE's divisible share, and a declaration that the

judgment is binding against the State in any action by or against it, GE's

---

[1] The Supreme Court has found no conceptual difference between a federal waiver of immunity
and a state waiver.  *See College Savings Bank v. Florida*, 527 U.S. 666, 682 (rules regarding
federal waiver of immunity should be no different with respect to state immunity); *see also*
*California v. Deep Sea Research,* 523 U.S. 491, 506-07 (1998) (recognizing correlation
between sovereign immunity principles applicable to states and federal government).

counterclaims go well beyond defensive offset (Counterclaim, p. 18).[2]

Under *Forma,* GE's affirmative counterclaims need a specific jurisdictional basis, which they do not have here. *United States v. Shaw,* 309 U.S. 495, 503 (1940). In light of the Supreme Court's decision in *Seminole Tribe*, CERCLA does not provide a jurisdictional basis for GE's CERCLA liability counterclaims. Nor is there a jurisdictional basis – and an express State waiver - for GE's common law public nuisance counterclaim. Only the New York Court of Claims Act potentially provides the requisite jurisdictional basis for that claim, but not before this Court. *See* CCA § 9(2).

Even assuming for the sake of argument that GE's counterclaims are solely in the nature of offset, in CERCLA Congress provided a responsible party like GE statutory remedies to seek to reduce its liability or to defeat a government's claims. CERCLA Section 107(b) gives GE three defenses it may assert to defeat the State's claims. 42 U.S.C. § 9607(b)(1)-(4). Section 107(a) gives GE the ability during the damages phase to challenge - and reduce - the State's recovery of response costs by

---

[2] GE mischaracterizes its counterclaims in arguing that they do not seek affirmative relief but "only an offset of response costs" (GE Brief, p. 15). The counterclaims speak for themselves, and clearly ask for a declaratory judgment that the State is liable under CERCLA 107(a) as an owner/operator/arranger (Counterclaim, ¶ 28-30), and is liable under the common law for "creating public nuisance" (¶ 40). GE also asks for judgment "declaring that the State is liable to GE for all response costs *to be incurred by GE in the future* which exceeds GE's divisible share" (¶ 38); and that any judgment on the counterclaims be "binding in this action and *in any future action by or against the State* under CERCLA §§ 107 or 113(f) in connection with the Site." (Prayer for Relief (C), p. 18) (emphasis added). Nevertheless, even assuming for the sake of argument that the counterclaims are only seeking an offset, under *Forma*, a jurisdictional basis to award the offset is still required.

4

showing that they are inconsistent with the national contingency plan ("NCP"). 42 U.S.C. § 9607(a)(1) – (4)(A). In requiring the State's costs to be "not inconsistent with the national contingency plan," CERCLA gives GE a statutory mechanism to reduce or offset its own liability for response costs without the necessity of an affirmative liability finding against the State, as GE's counterclaims seek. Although GE is entitled to raise available CERCLA's statutory defenses to this action, GE may not seek affirmative relief establishing the State's liability under CERCLA Sections 107(a) and 113(f). GE's counterclaims fall outside of CERCLA's statutory scheme. *United States v. Rohm & Haas,* 939 F. Supp. 1157, 1161-62 (D.N.J. 1996) (recoupment claims against state not proper under CERCLA).

GE cites *Lapides v Board of Regents*, 535 U.S. 613 (2002) for the proposition that the State's filing of *any* claim in federal court operates as a complete waiver (GE Brief, p. 7). That is not the Court's holding, however, and the facts of *Lapides* are easily distinguished from the facts here. In *Lapides*, a Georgia university was sued first in State court, but then voluntarily removed the case to federal court and thereafter sought dismissal of the suit on Eleventh Amendment immunity grounds. Immunity could not have been asserted in the original State court action. Recognizing the tactical advantage the State gained in removing the case to federal court and then seeking dismissal on immunity grounds, the Supreme Court held that the State's removal constituted a waiver. That is not what the State has done here. New York has neither sought nor achieved a tactical or litigation advantage in bringing this action in federal court and *Lapides* is not on point.

In support of its waiver argument, GE attempts to distinguish *Burnette v. Carothers*, 192 F. 3d 52 (2d Cir. 1999), claiming that the State in that case was a defendant rather than a plaintiff and did not voluntarily bring an action in federal court, as the State did here (GE Brief, p. 7, n. 4). GE exalts form over substance. Regardless of whether the State is a defendant to a direct claim or a counter-defendant to a counterclaim, its immunity does not change. In either case, a private party is seeking affirmative relief from the Court against the State and must have a jurisdictional basis. In any event, *Burnette* stands for the proposition that in this Circuit after *Seminole Tribe*, CERCLA claims cannot be asserted against the State.

GE also argues that its counterclaims do not constitute a "suit" under the Eleventh Amendment (GE Brief, p. 7). GE fails to cite any case to support its narrow reading of the Eleventh Amendment's use of the word "suit," nor any case differentiating a direct claim from a counterclaim. The test for whether GE's counterclaims constitute a suit against the State within the meaning of the Eleventh Amendment turns on whether they seek affirmative relief and could be brought by GE as a plaintiff in a stand-alone CERCLA Section 113 contribution action. GE's CERCLA contribution counterclaims could be brought as direct claims against responsible parties, and indeed, GE has brought such direct claims in other matters, seeking the same affirmative relief it seeks here, namely a determination of liability and contribution for response cost damages. *See e.g., General Electric v. AAMCO Transmissions, Inc.,* 962 F. 2d 281 (2d Cir. 1992).

In any event, the question of what constitutes a "suit" against the State under the Eleventh Amendment is not subject to serious dispute and was answered nearly 200 years ago in *Cohens v. Virginia*, 19 U.S. 264, 407-08 (1821) (a suit is the prosecution or pursuit of some claim, demand, or request in a court of justice). GE's counterclaims demand a judicial determination of the State's CERCLA and common law liability and therefore are unquestionably a "suit" against the State within the meaning of the Eleventh Amendment.

GE also argues that the Court of Claims Act does not bar its common law public nuisance counterclaim because the claim is an equitable one (GE Brief, p. 18). GE cites no support for this proposition. Nevertheless, its counterclaims are not strictly equitable. Equitable or otherwise, absent an express waiver allowing GE's public nuisance counterclaim, the State is immune and has not waived its immunity.

### B. The Statutory Waiver of State Immunity in Bankruptcy Proceedings Does Not Apply Here.

GE asserts that "courts have universally held" that a State waives its immunity by filing a federal lawsuit, and in support of this proposition, cites a bankruptcy case, *Gardner v. New Jersey,* 329 U.S. 565 (1947), (GE Brief, pp. 6-7). *Gardner* is not on point here.[3] In *Gardner,* the Supreme Court addressed the question of whether a state's filing of a claim in a bankruptcy proceeding operated

___

[3] *Gardner* was superseded by statute, specifically Code Section 106. *See Wyoming Department of Transportation v. Straight,* 143 F. 3d 1387, 1390 (10th Cir. 1998) (Bankruptcy Code Section 106 codifies and supersedes *Gardner*).

as a waiver and found that it did.  The Court in *Gardner* construed a bankruptcy provision that abrogated state immunity and was enacted pursuant to the Constitution's Bankruptcy Clause, Article I, § 8, cl. 4.[4]  The Court more recently construed the similar superseding bankruptcy abrogation provision, namely Section 106 of the Bankruptcy Code, 11 U.S.C. § 106, and analyzed Congress' authority to enact it under the Constitution's Bankruptcy Clause.  *Tennessee Student Assistance Corporation v. Hood,* 541 U.S. 440, 451 (2004) (debtor's proceeding against a state agency to determine dischargeability of student loan debt was authorized by Section 106 and not barred by Eleventh Amendment).  In *Hood*, the Court held that Congress could validly abrogate state Eleventh Amendment immunity and define situations in which a state waives immunity in a bankruptcy proceeding.  541 U.S. at 451.  The Court based its decision to uphold Code Section 106 on the fact that the states had agreed when they ratified the Constitution to give up their Eleventh Amendment immunity in favor of uniform nationwide bankruptcy laws.  541 U.S. at 451.[5]

In stark contrast, the Court in *Seminole Tribe* held that laws like CERCLA, which are enacted pursuant to the Commerce Clause, Article I, § 8, cl. 3, could not

---

[4] U.S. Const. art. I, § 8, cl. 4 provides that Congress shall have the power to establish "uniform laws on the subject of bankruptcies throughout the United States."

[5] *See also Central Virginia Community College v. Katz*, 546 U.S. 356, 377-379 (2006) (proceeding by bankruptcy trustee to recover preferential transfers by debtor to State agencies was not barred by sovereign immunity and Congressional abrogation in Bankruptcy Code Section 106 was valid exercise of authority under Bankruptcy Clause, which States had ratified).

abrogate or waive a state's immunity because the states had never agreed to the abrogation for any law Congress passed. 517 U.S. at 54-59. Congressional abrogation of State immunity pursuant to Code Section 106 and the Bankruptcy Clause is not at issue here. GE's reliance on *Gardner* and other bankruptcy cases construing Section 106's abrogation and waiver is simply misplaced.

GE argues that the State has waived its immunity to such an extent that this Court can consider both compulsory and permissive counterclaims, and relies on another bankruptcy case, *Ossen v. Connecticut Department of Social Services (Charter Oak),* 361 F. 3d 760 (2d Cir. 2004) (GE Brief, pp. 14-16). *Charter Oak* is not on point for the same reason that *Gardner* is not. The Second Circuit in *Charter Oak* construed the immunity waiver in Bankruptcy Code Section 106 and found that it allows both permissive (offset) and compulsory (recoupment) counterclaims to be asserted against a State. See 11 U.S.C. § 106(a)-(c). That finding obviously applies only in a bankruptcy proceeding. CERCLA contains no similar waiver provision to give this Court jurisdiction over permissive or compulsory counterclaims, and GE does not argue that it does. Nevertheless, such a provision in CERCLA would be invalid under *Seminole Tribe* because CERCLA was enacted under the Commerce Clause and statutory abrogation is not permitted.

Moreover, if Congress cannot abrogate state immunity when acting under its Commerce Clause power, federal procedural rules governing compulsory counterclaims clearly cannot. Congress undoubtedly has the power to regulate practice and procedure in federal courts, but only if consistent with the constitution

and substantive state law. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 10 (1941). Such

rules may not abridge or modify substantive rights under state of federal law, nor

extend the scope of federal court jurisdiction. 312 U.S. at 12l; *Washington-Southern*

*Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 635

(1924).[6] This includes the substantive right of sovereign immunity and the Court's

jurisdiction to hear claims against the State. Thus, Rule 13(a)'s compulsory

counterclaim provision cannot be construed as a waiver of immunity, nor confer

jurisdiction over GE's counterclaims against the State. Moreover, no "logical

relationship" between the State's main claims and GE's counterclaims can trump

the State's immunity, as GE asserts (GE Brief, p. 8).

GE's reliance on *State of New York v. Oneida Indian Nation*, 2007 WL

2287878 (N.D.N.Y. 2007) is also misplaced because the court based its decision in

part on *Charter Oak* and the Bankruptcy Code's express waiver provision in Code

Section 106. Furthermore, the underlying dispute at issue in *Oneida Indian Nation*

was not predicated on CERCLA, but on the regulatory and jurisdictional framework

of the Indian Gaming Act, 28 U.S.C. § 2701.

---

[6] In 1934, Congress' enacted the original federal rules of civil procedure under the authority of 28 U.S.C. § 723b, now codified in 28 U.S.C. § 2072, both of which expressly state that the rules shall not "abridge, enlarge, nor modify the substantive rights of any litigant." Rule 13(a), which governs compulsory counterclaims, has been judicially construed to effectuate a waiver of state immunity for recoupment when a state invokes the jurisdiction of a federal court. This construction is inconsistent with the statutory limitation under which the rule was adopted, as well as with Rule 82, which provides that federal court jurisdiction is unaffected by the federal rules of civil procedure.

C. GE's Counterclaims Are Not Compulsory Because They Do Not Arise From the Same Transaction and Occurrence.

In asserting the State's waiver of immunity, GE argues that its counterclaims are compulsory because they arise from the same transaction and occurrence (GE Brief, pp. 8; 14-16). The court need not decide whether GE's counterclaims are compulsory because they fail to state a claim as a matter of law, as set forth below. In any event, they cannot be considered compulsory for purposes of waive because the facts GE asserts involve a "transaction and occurrence" different from the transaction and occurrence is at issue in the State's complaint, namely GE arrangement for disposal of PCB waste in the 1950s and 1960s (Complaint ¶¶ 20-29). F.R.C.P. 13(a); *United States v. Green,* 33 F. Supp. 2d 203, 220-21(W.D.N.Y. 1998) (counterclaim alleging government gross negligence in CERCLA response action dismissed because it involved different and later transaction and occurrence than facts alleged in government cost recovery complaint against polluter).

## POINT II

## GE'S CERCLA COUNTERCLAIMS FAIL TO STATE A CLAIM

GE's counterclaims seek to hold the State liable under CERCLA Sections 107(a) and 113(f). The State's complaint seeks to hold GE liable under CERCLA Section 107(a) for arranging for the disposal of its PCB waste capacitors, and to recover the State's response costs (Complaint ¶¶67-82). In the absence of GE's actions, the State would not have been forced to undertake emergency removal and

response actions for the protection of human health and the environment. GE is the polluting party that CERCLA is intended to reach, not the State.

A. GE's CERCLA Counterclaims Do Not Plead Facts to Support a *Prima Facie* Showing that the State is a Liable Party Under CERCLA Section 107(a).

Assuming solely for the sake of argument that the State has waived its immunity in bringing this action, GE's counterclaims fail to state claims on which relief can be granted. F.R.C.P. 12(b)(6). GE's counterclaims do not allege the fundamental factual predicates necessary for a finding of State liability under CERCLA Section 107(a) as an owner/operator or an arranger.

GE's counterclaims assert that the State is an owner/operator of a facility at which hazardous substances have been disposed, and that the State was an arranger for the disposal of hazardous substances (Counterclaim, ¶¶ 12-13; 23; 28-29). The factual underpinnings of GE's counterclaims, however, concern only DEC's removal and remedial actions undertaken in response to GE's disposal of PCBs. Courts have consistently dismissed a polluter's counterclaims that allege improper government response action on the basis of failure to state a claim, even when the government.[7] This well-settled principle has been consistently followed unless the government has acted in a proprietary role and bears responsibility as the polluter.

---

[7] *See In re Paoli Rail Yard PCB Litigation,* 790 F. sup 94, 95-96 (E.D. Pa.), *aff'd.* 980 F. 2d 724 (3d Cir. 1992); *U.S. v. Dart Industries,* 847 F. 2d 144, 146, 146 (4th Cir. 1988); *U.S. v. Green,* 33 F. Supp. 2d 203, 218-225 (W.D.N.Y. 1998); *United States v. Rohm & Haas,* 939 F. Supp. 1157, 1161 (D.N.J. 1996); *U.S. v. American Color and Chemical Corp.,* 885 F. Supp. 111, 113-14 (M.D. Pa. 1995); *U.S. v. American Color and Chemical Corp.,* 858 F. Supp. 445, 451 (M.D. Pa. 1994); *U.S. v. Atlas Minerals,* 797 F. Supp. 411, 420 (E.D. Pa. 1992); *State of New York v. City of Johnstown,* 701 F. Supp. 33, 36-38 (N.D.N.Y. 1988); *Stilloe v. Almy Bros.,* 782 F. Supp. 731, 736 (N.D.N.Y. 1992); *United States v. Western Processing*, 761 F. Supp. 725, 731 (W.D. Wash. 1991); *U.S. v. Azrael,* 765 F. Supp. 1239, 1245 (D. Md. 1991).

*See, e.g., FMC Corp. v. U.S. Department of Commerce,* 29 F. 3d 833, 836 (3d Cir. 1994) (government's role in controlling manufacturing facility during war time constituted operation of facility under CERCLA 107). This is the exception rather than the rule, however.

GE has not pled the requisite facts for finding the State liable on the CERCLA counterclaims. To establish a *prima facie* liability case against the State for contribution under CERCLA Section 113, GE must plead – and ultimately prove – that the State is liable under CERCLA Section 107(a). Specifically, GE must plead that (1) the containment cell is a "facility" at which the State arranged to dispose of waste; (2) that there has been a release or threat of release from the containment cell; (3) that GE has incurred response costs in connection with the release; and (4) the costs incurred are consistent with the NCP. *GE v. AAMCO*, 962 F. 2d at 285.

In its counterclaims, GE fails to allege any facts showing that the containment cell is a facility within the meaning of CERCLA Section 101(9). The State's temporary placement of GE's waste in the containment cell as a part of an emergency removal action does not make the cell a "facility" nor constitute "disposal" within the meaning of CERCLA Section 101(9) (defining "facility"), or Section 101(29) (defining "disposal"). 42 U.S.C. §§ 9601(9) and (29). As set forth in its complaint and supporting affidavits here, the State sought to contain the waste on temporary basis, not dispose of it. More importantly, GE never alleges that it has incurred response costs in connection with the release of hazardous substances

and that those costs are consistent with the NCP. GE's counterclaims are legally deficient.

Even assuming the allegations in GE's counterclaims are true, GE is not without a remedy for the alleged acts and omissions of the State. It has the NCP inconsistency challenge, as set forth above. Indeed, some courts have dismissed counterclaims similar to those GE asserts, holding that the *only* way a polluter can challenge government action under CERCLA and reduce its own liability is to prove in the damages phase that the government's costs were not consistent with the NCP. *See United States v. American Color,* 885 F. Supp. 111, 115 (M.D. Pa. 1995); *United States v. Atlas Minerals,* 797 F. Supp. 411, 419-20 (E.D. Pa. 1992).

GE's reliance on *California Department of Toxic Substances v. Dobbas,* 2014 WL 4627248 (Ed. Cal. 2014) is misplaced (GE Brief, p. 21, 24). *Dobbas* did not address the threshold issues of State sovereign immunity and waiver, or the issue of a state acting in an emergency. Moreover, *Dobbas* is not controlling in light of the many decisions to the contrary in this (s*ee Stilloe, Johnstown* and *Green*) and other jurisdictions, where counterclaims against the government much like GE's were dismissed (see footnote7, *supra*). In any event, *Dobbas* was wrongly decided because California's activities apparently were solely cleanup efforts to address the waste disposed by other parties. California was not the polluter, unlike the United States in *FMC* and the other cases on which the *Dobbas* court relied.

GE's counterclaims fail to show that the State acted at any time in a proprietary rather than regulatory role and had ownership of the PCB waste with

an intent to dispose of it. GE alleges no factual nexus whatsoever between the State and the waste that GE itself arranged to dispose, which is a critical liability component. *State of New York v. City of Johnstown,* 701 F. Supp. 33, 36 (N.D.N.Y. 1988). Notably, GE never disputes that the PCB waste in the containment cell was its own. GE cannot establish liability under Sections 107(a) and 113(f) as a matter of law. 42 U.S.C. §§ 9607(a) and 9613(f).

GE's assertion that the State owned the *property* on which the containment cell is located also does not make the containment cell a "facility" nor the State an "owner/operator" or "arranger" within the meaning of CERCLA Section 107(a). The State taking title to the property on which the containment cell is located years after the emergency removal action does not make the cell a facility in which the State disposed of hazardous substances. Furthermore, the "facility" at issue in the State's complaint is the Alkes Site, where GE arranged for the disposal of its PCB waste, and where that waste was released into the environment. GE's counterclaims do not allege that the State operated the Alkes facility or arranged for disposal of hazardous substances there.

GE's counterclaims also do not plead any facts supporting its legal conclusion that the State was "grossly negligent" (Counterclaim. ¶ 26). In order to state a claim for gross negligence, GE's counterclaims must specify facts showing not only the State's grossly negligent actions, but that the resulting harms "are not due to any voluntary action or contribution on the part of the plaintiff" *James v Wormuth*, 21 N.Y.3d 540, 546 (2013); Prosser and Keeton, Torts § 39 at 244 (5th ed). GE's

counterclaims assert only the legal conclusion that the State was grossly negligent (Counterclaim ¶ 26).  That is not sufficient.  Although the factual allegations in the counterclaims are deemed true for purposes of a motion to dismiss, legal conclusions enjoy no similar presumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

GE also alleges without factual or legal support that CERCLA's  "emergency provision" in Section 107(d)(2) does not apply because the State owned/operated the containment cell for 30 years (GE Brief pp. 19-20).  It cannot be disputed that the State acted in response to a public health emergency because of the presence of PCB contaminated soil on residential properties and acted in response to extensive PCB contamination at the Alkes Site (Anders Aff., ¶¶ 21-23; Burke Aff. ¶¶ 13, 16-17, 33-38).  DEC's removal and response actions flowed from that emergency and the State is entitled to the exemption in Section 107(d)(2). GE also argues that the NCP's provision, 40 C.F.R. § 300.130(i), which deals with the President's declaration of a major disaster, can be the only meaning of "emergency."  That is not what the NCP says or means.

GE also fails to allege facts that, if true, would establish that the State arranged for the disposal of waste.  GE also cannot prove any set of facts showing that the State arranged for the "disposal" of waste in the containment cell and calling the State's actions "disposal" does not make it so.  Indeed, as the undisputed facts in the affidavits submitted in support of the State's motion show, the containment cell was a secure but temporary place, created as part of an emergency "removal action," to contain PCB waste, which along with the neighboring Alkes

Site, was later the subject of a final "remedial action," as those terms are defined in CERCLA Section 101(23) and (24) (Burke Aff. ¶¶ 21, 25-26; 29, 33).[8]  Today, there is no containment cell or waste remaining as a result of the State's removal and remedial actions.  GE's counterclaims do not allege the required elements for CERCLA Sections 107(a) arranger liability in order to support Section 113(f) contribution.

    B.  GE's CERCLA Counterclaims Fail to State a Claim
          to the Extent They Seek a Reduction in GE's Liability.

GE's CERCLA counterclaims seek a reduction in GE's liability for response costs.  They fail to state a claim because, as set forth above, CERCLA Section 107(a) gives GE a specific avenue through an NCP consistency challenge in which to offset and reduce the costs for which it otherwise may be liable.  The State concedes GE's ability to assert the NCP inconsistency defensively in the damages phase of this action to achieve such a reduction, but its affirmative counterclaims for the State's liability are inconsistent with CERCLA's statutory scheme and therefore fail to state a claim.

**POINT III**

**GE FAILS TO STATE A COMMON LAW CLAIM
FOR PUBLIC NUISANCE**

GE's third counterclaim for common law public nuisance also fails to state a claim (Counterclaim ¶ 40) because it fails to plead the requisite elements of that

---

[8] *See State of New York v. Next Millennium,* 732 F. 3d 117,124-25 (2d Cir. 2013) (removal actions are cleanup measures taken to respond to immediate threats to public health and most often are of short duration, but they certainly can be long-running responses, and may be followed by permanent "response or remedial actions").

cause of action, such as interference with the public's exercise of rights common to all. *State of New York v. Shore Realty Corp.,* 759 F. 2d 1032, 1051 (2d Cir. 1985); *New York Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77 (1989). More importantly, GE's counterclaims do not allege the factual basis for why GE is the proper party to assert a public nuisance claim here on the public's behalf. In other words, GE fails to plead its standing to vindicate the public's rights.

## CONCLUSION

CERCLA is a remedial statute with two primary goals: (1) to enable the government to respond to the release or threat of release of hazardous substances into the environment; and (2) to hold parties responsible for the releases liable for the costs of cleanup. *State of New York v. Next Millennium*, 732 F. 3d at 124. It was GE's arrangement for the disposal of PCB waste that caused environmental contamination, which the State had to address at taxpayer expense. In furtherance of CERCLA's remedial goals, and for the foregoing reasons as well as those set forth in the State's opening brief and supporting affidavits, the State respectfully requests that GE's counterclaims be dismissed for lack of jurisdiction and failure to state a claim.

Dated:    Albany, New York              Respectfully submitted,
        January 28, 2015

                                     ERIC T. SCHNEIDERMAN
                                     New York Attorney General

                    By:   _____
                                     MAUREEN F. LEARY
                                     Assistant Attorney General
                                     Bar Roll Numbers: 501162

## CERTIFICATE OF SERVICE

Maureen F. Leary hereby certifies that on the 28th day of January, 2015, she served an electronic copy of the State of New York's Reply Memorandum of Law in Further Support of the State's Motion to Dismiss General Electric's Counterclaims upon each of the parties set forth below:

**Robert Rosenthal, Esquire**
Greenburg Traurig, LLP
54 State Street
Albany, New York  12207
rosenthalrm@gtlaw.com

**Stephen Russo**
Greenburg Traurig, LLP
200 Park Avenue
MetLife Building
New York, NY 10166
russos@gtlaw.com

_____
MAUREEN F. LEARY